Irene Joan Orquia Catlett, appellee, v.
Jeffrey Paul Catlett, appellant.
___ N.W.2d ___

Filed August 18, 2015.    No. A-14-741.

1. **Divorce: Appeal and Error.** An appellate court's review of a trial court's judgment in dissolution proceedings is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion.

2. ____: ____. Upon an appellate court's de novo review on the record in dissolution proceedings, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Divorce: Jurisdiction: Appeal and Error.** The standard of review in an appeal concerning a jurisdictional issue in an action for dissolution of marriage is the same standard for appellate review of any other judgment in a dissolution action.

4. **Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent of the trial court's decision.

5. **Divorce: Actions: Domicile: Intent.** Pursuant to Neb. Rev. Stat. § 42-349 (Reissue 2008), in order to maintain an action for divorce in Nebraska, one of the parties must have had actual residence in this state with a bona fide intention of making this state his or her permanent home for at least 1 year prior to the filing of the complaint.

6. **Divorce: Domicile: Jurisdiction.** Satisfaction of the residency requirement in Neb. Rev. Stat. § 42-349 (Reissue 2008) is required to confer subject matter jurisdiction on a district court hearing a dissolution proceeding.

7. **Jurisdiction: Words and Phrases.** Jurisdiction is defined as a court's power or authority to hear a case.

8. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.

9. **Judgments: Jurisdiction.** A judgment entered by a court which lacks subject matter jurisdiction is void.

10. **Judgments: Jurisdiction: Collateral Attack.** A void judgment entered by a court which lacks subject matter jurisdiction may be attacked at any time in any proceeding.

11. **Divorce: Actions: Domicile: Words and Phrases.** The language of Neb. Rev. Stat. § 42-349 (Reissue 2008) requiring an "actual residence in this state" means that one party is required to have a bona fide domicile in Nebraska for 1 year before commencement of a dissolution action.

12. **Domicile: Intent: Words and Phrases.** Domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home.

13. **Domicile.** Once established, domicile continues until a new domicile is perfected.

14. **Property Division.** The purpose of a property division is to distribute the marital assets equitably between the parties.

15. **Divorce: Alimony.** A court entering a decree in a dissolution proceeding may order alimony under Neb. Rev. Stat. § 42-365 (Reissue 2008) as may be reasonable with regard to the listed statutory factors.

16. **Alimony: Property Division.** While the criteria for reaching a reasonable award of alimony overlap with the criteria for dividing property reasonably, the two serve different purposes and are considered separately.

17. **Alimony.** In addition to the statutory factors, a trial court awarding alimony also considers the income and earning capacity of each party, as well as the general equities of each situation.

18. **Alimony: Appeal and Error.** In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

19. **Divorce: Child Support.** The Nebraska divorce statutes do not impose a duty upon any individual other than a parent to pay for the support of minor children.

20. **Child Support: Rules of the Supreme Court.** The purpose of the Nebraska Child Support Guidelines is to recognize the equal duty of

both parents to contribute to the support of their children in proportion to their respective net incomes.

21. **Affidavits: Breach of Contract.** An affidavit of support signed as part of a federal immigration process is an independent contract that may be enforced separately under a breach of contract theory.

22. **Parent and Child.** A parenting plan shall serve the best interests of the child.

23. **Parent and Child: Visitation.** A reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent.

24. **Visitation.** There is not a certain mathematical amount of visitation that is considered reasonable; the determination of reasonableness is to be made on a case-by-case basis.

25. **Attorney Fees.** An award of attorney fees depends on multiple factors including the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case.

Appeal from the District Court for Nemaha County: DANIEL E. BRYAN, JR., Judge. Affirmed in part, and in part vacated.

Matt Catlett for appellant.

Angelo M. Ligouri, of Ligouri Law Office, for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jeffrey Paul Catlett appeals from a decree of the district court for Nemaha County, Nebraska, dissolving his marriage to Irene Joan Orquia Catlett and issuing further orders in connection with that dissolution. Jeffrey argues that the district court lacked subject matter jurisdiction over the dissolution proceeding and abused its discretion in its determinations regarding property, support, and children. We affirm the decision of the district court on all issues with the exception of its award of child support and health insurance for Jeffrey's ex-stepdaughter, which award we vacate.

## BACKGROUND

Jeffrey and Irene met in Kuwait in 2010. Jeffrey is an American citizen and contracts with a company in Kuwait to work overseas. Irene is a Filipino national who moved to Kuwait in 1997. They were married in April 2011. The parties' son, Jeffrey Paul Catlett II (J.P.), was born in December 2011. For a period of time, Jeffrey and Irene resided together in Kuwait. In December 2012, Irene moved to Jeffrey's house in Auburn, Nebraska, with J.P. and her daughter from a prior relationship. In order to facilitate this move to the United States, Jeffrey sponsored the visas for Irene and her daughter, which included contracting with the federal government and promising to maintain them at an income level of at least 125 percent of the poverty threshold. Irene filed a complaint for dissolution of marriage in the district court for Nemaha County on June 13, 2013.

*Trial Evidence of Jeffrey's Domicile.*

In the dissolution complaint, Irene alleged that Jeffrey had been a resident of Nebraska for more than 1 year prior to the filing and that "[f]or more than one (1) year last past and during that time [he] has had a bona fide intention of making the State of Nebraska his home and place of residence." Jeffrey admitted the above residency statement in his answer and counterclaim and further affirmatively stated that he was "a resident of Auburn, Nemaha County, Nebraska, and has been a resident of the State of Nebraska for more than one year prior to the filing of" the counterclaim. He further identified the Auburn address for both himself and Irene, with a notation that he was currently employed overseas in Kuwait.

At trial, Irene testified that Jeffrey works in Kuwait but is a resident of Nemaha County. Jeffrey did not contest this testimony at trial. Additionally, when his counsel asked, "Okay. And we've heard some testimony that you — your permanent residence is still Auburn, Nebraska; is that — ," he answered, "I have two residences: Here and Kuwait."

Although residency was not a contested issue at trial, evidence offered for other purposes revealed that Jeffrey purchased a house in Auburn in July 2009 which he continues to maintain and plans to maintain in the future. While Jeffrey was in Kuwait, he maintained a bank account in Auburn and his cousin held a financial power of attorney for him so she could take care of certain affairs of his in Auburn through this account. Jeffrey's tax records indicate that he was present in the United States for 36 days in 2012, 21 days in 2011, and 60 days in 2010. He listed on his tax returns that he was a Kuwait resident full year, lived in rental housing in Kuwait, and entered Kuwait with a permanent resident visa. The tax records also reflect that he maintained a home in the United States while living abroad. In the paperwork sponsoring Irene's and her daughter's visas, Jeffrey listed his house in Auburn as his mailing address, did not list a place of residence different from his mailing address, and listed his country of domicile as Kuwait. In Jeffrey's proposed parenting plan in this proceeding, he stated that although he "works overseas he has vacation time from work when he returns to Nebraska." He proposed spending all of his vacation time from arriving at the airport to departing as parenting time with J.P. in Nebraska.

*Property.*

The evidence revealed that Jeffrey has maintained his employment for the entire time of the parties' marriage and that his average monthly income exceeds $13,000. Since Irene moved to the United States to act as a stay-at-home mother to J.P., to her daughter, and to Jeffrey's son from a prior relationship, Irene has not worked, except for a 1-week job through a "temp" agency. During the marriage, the parties purchased a Chevrolet Tahoe. Other property of the parties includes funds in several bank accounts in Jeffrey's name. The parties also have debts of over $150,000, including credit cards and personal loans in Jeffrey's name. During the

marriage, Irene had access to only one credit card, with an outstanding balance of under $3,000 at the time of trial.

*Posttrial Proceedings.*

Following trial, the district court entered a decree and order dissolving the parties' marriage. In the decree, the court specifically found that it had jurisdiction over the subject matter of the action. It awarded the legal and physical custody of J.P. to Irene with parenting time awarded to Jeffrey, ordered Jeffrey to pay child support and health insurance for both J.P. and Irene's daughter along with alimony and attorney fees to Irene, and provided for a division of property.

Jeffrey timely filed a motion to vacate or modify, arguing for the first time that he was not a Nebraska resident and that the court lacked subject matter jurisdiction. Jeffrey also alleged deficiencies in the substance of the court's award as it related to support for Irene's daughter, alimony, and the division of property. Jeffrey also moved for a new trial.

At a hearing on Jeffrey's motions, the district court received affidavits from both parties on the issue of jurisdiction. In his affidavit, Jeffrey blamed his attorney for his prior pleadings asserting Nebraska residency and claimed that he in fact was a resident of Kuwait at all relevant times.

According to Jeffrey's affidavit, he moved from Delray Beach, Florida, to Auburn in 2003 to look after his ill mother. He stayed with his cousin during this time. He resided in Auburn until May 2004, when he accepted a position as a contractor supporting U.S. troops in Iraq. In February 2005, Jeffrey moved from Iraq to Kuwait, and he has lived there since. His cousin and her son lived in Jeffrey's Auburn house after he purchased it. Jeffrey stated that he has qualified as a bona fide resident of Kuwait for tax purposes since 2005. He claimed he has never voted in Nebraska, although Irene asserted without evidence in her affidavit that he is a registered voter in Nebraska. She also stated, without supporting

evidence, that Jeffrey maintains a driver's license and "conceal and carry permit" in Nebraska.

The court denied Jeffrey's motions, and he timely appealed.

## ASSIGNMENTS OF ERROR

Jeffrey assigns that the district court erred in its (1) exercise of subject matter jurisdiction, (2) division of property, (3) award of alimony to Irene, (4) determination of child support, (5) award of parenting time to Jeffrey, (6) award of attorney fees to Irene, and (7) failure to grant Jeffrey's motions to modify or vacate or for a new trial.

## STANDARD OF REVIEW

[1,2] An appellate court's review of a trial court's judgment in dissolution proceedings is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. See *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989). In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *id.*

[3,4] The standard of review in an appeal concerning a jurisdictional issue in an action for dissolution of marriage is the same standard for appellate review of any other judgment in a dissolution action. *Id.* When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent of the trial court's decision. See *Rozsnyai v. Svacek*, 272 Neb. 567, 723 N.W.2d 329 (2006).

## ANALYSIS

*Subject Matter Jurisdiction.*

Jeffrey argues that the district court lacked subject matter jurisdiction over these proceedings because neither party had

an actual residence in Nebraska with a bona fide intention of making it his or her permanent home for at least 1 year prior to the filing of the action. Based upon our de novo review of the record, we conclude that the district court had subject matter jurisdiction under Neb. Rev. Stat. § 42-349 (Reissue 2008) because evidence in the record supports a finding that Jeffrey was domiciled in Nebraska for more than 1 year before the filing of the dissolution complaint.

[5,6] Section 42-349 provides that in order to maintain an action for divorce in Nebraska, one of the parties must have had "actual residence in this state with a bona fide intention of making this state his or her permanent home for at least one year prior to the filing of the complaint." See *Rozsnyai v. Svacek, supra*. Satisfaction of the residency requirement in § 42-349 is required to confer subject matter jurisdiction on a district court hearing a dissolution proceeding. Neb. Rev. Stat. § 42-351 (Reissue 2008); *Rozsnyai v. Svacek, supra*.

[7-10] Jurisdiction is defined as a court's power or authority to hear a case. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996). Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Id.* A judgment entered by a court which lacks subject matter jurisdiction is void. *Id.* It is a longstanding rule in Nebraska that such a void judgment may be attacked at any time in any proceeding. *Id.* This is true even if a party attacks subject matter jurisdiction only after being displeased with the decision of a district court. See *Paulsen v. Paulsen*, 11 Neb. App. 582, 658 N.W.2d 49 (2003) (vacating judgment for lack of subject matter jurisdiction where mother raised jurisdictional issue on appeal only after custody was awarded to child's father).

[11-13] The Nebraska Supreme Court has interpreted the language of § 42-349 requiring an "actual residence in this state" to mean that one party is required to have a "'bona fide domicile'" in Nebraska for 1 year before commencement of a dissolution action. *Huffman v. Huffman*, 232 Neb.

742, 748, 441 N.W.2d 899, 904 (1989). Domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home. *Id.* The absence of either presence or intention thwarts the establishment of domicile. *Id.* Once established, domicile continues until a new domicile is perfected. See *State v. Jensen*, 269 Neb. 213, 691 N.W.2d 139 (2005). In some cases, persons with significant physical absences from Nebraska in the year preceding a petition for dissolution may qualify as Nebraska domiciliaries for jurisdictional purposes. See *Rector v. Rector*, 224 Neb. 800, 401 N.W.2d 167 (1987) (finding jurisdiction where truckdriver who spent majority of his time driving cross country was raised in North Platte, Nebraska, considered it his home, did his banking there, and testified to several years of residence before filing petition for divorce).

Irene does not satisfy § 42-349 because she resided in Nebraska for only about 6 months before filing her petition, and so jurisdiction is dependent upon Jeffrey's domicile. Although the record is clear that Jeffrey was present in the United States for only 36 days in 2012, the year preceding the dissolution petition, we must consider all of the evidence to determine whether Jeffrey established and maintained a Nebraska domicile in the years before this action was filed. See *Rector v. Rector, supra*.

Evidence that Jeffrey formed the intent to make Nebraska his permanent home exists from the time period beginning when he bought a home in Auburn in July 2009. Jeffrey's cousin lived in his Auburn home and took care of some of his affairs from Nebraska with a power of attorney. Jeffrey used the address of the Auburn home for several official purposes, including filing tax and immigration forms. Jeffrey disclosed on his tax forms that he "maintain[ed] a home in the United States" at the Auburn house address. He also held a bank account in Auburn.

Further, Jeffrey's pleadings, testimony, and representations to the district court in this case serve as evidence that he intended to make Nebraska his permanent or fixed home. See *State ex rel. Rittenhouse v. Newman*, 189 Neb. 657, 204 N.W.2d 372 (1973) (holding that testimony as to intent is entitled to great weight in domicile determinations). In his answer and counterclaim, Jeffrey admitted that for more than a year he had held a "bona fide intention of making the State of Nebraska his home and place of residence." Jeffrey listed the Auburn home as his mailing address in his pleadings and stated multiple times that he was a Nebraska resident, despite being currently employed overseas. In his proposed parenting plan, Jeffrey represented that he returns to Nebraska during vacation from his work and proposed spending all of his vacation time parenting J.P. in Nebraska. From this evidence, we determine that Jeffrey formed the intent to make Nebraska his fixed home more than 1 year before the petition for dissolution of marriage was filed.

Although Jeffrey was working in Kuwait during this time period, he returned to Nebraska during vacation from work. His physical presence in Nebraska and consistently returning to the state, combined with the intent to make it his permanent home, were sufficient for Jeffrey to establish Nebraska as his domicile. See *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989). Jeffrey testified to the length of this domicile when he admitted in pleadings that he had been a resident for more than 1 year with the requisite intent. Accordingly, the trial court had jurisdiction under § 42-349 and this assignment of error is without merit.

*Division of Property.*

[14] Jeffrey next argues that the trial court abused its discretion in its division of property. The purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2008); *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

Under § 42-365, the equitable division of property is a three-step process. *Gangwish v. Gangwish, supra*. The first step is to classify the parties' property as marital or nonmarital. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Gangwish v. Gangwish, supra*. The principles and factors to be considered in reaching an equitable division include

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

§ 42-365.

At the time of the marriage, Jeffrey owned a home in Auburn. During the marriage, certain improvements were made to the home. The court concluded that the home was a premarital asset and that the improvements were made with premarital funds and therefore constituted property belonging to Jeffrey. The court determined, however, that $3,000 of marital funds were used to pay down the mortgage, and it awarded one-half of that amount to Irene; Jeffrey argues the court erred in making this award, because there was no evidence that Irene contributed financially to such payment.

Despite the district court's award of all personal property to Jeffrey with the exception of Irene's wedding and engagement rings, her and her daughter's clothing, and her daughter's bedroom set, Jeffrey argues that the court erred in ordering an equalization payment of $13,500. The district court arrived at this amount by awarding Irene one-half ($2,000) of the equity in the family vehicle and approximately one-third ($10,000) of the parties' bank account, in addition to the

$1,500 mortgage contribution previously discussed. Jeffrey argues that because he was awarded all of the debt, he should not have been assessed an equalization payment.

Jeffrey seems to argue that because Irene did not contribute financially to the household, she should not have been given anything beyond the few personal items awarded. While it is true that Irene was not employed outside the home while in Auburn, she was responsible for caring for J.P. and maintaining the residence while Jeffrey was in Kuwait, at Jeffrey's direction. Until moving to Auburn, she was gainfully employed in Kuwait, and she gave up that employment to move to the United States. Her cultural barriers and instructions from Jeffrey to "be a stay-at-home mother" prevented her from obtaining outside employment. Irene's contributions to the marriage are relevant and must be taken into consideration. See *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

Jeffrey also argues that funds in his Kuwait bank account should be considered nonmarital. At the time of the divorce, this account held in excess of $28,000. These funds came from Jeffrey's salary, which was deposited directly into this account, as well as a loan that Jeffrey took from the bank. Jeffrey's arguments that these funds are nonmarital seem to be that Irene did not contribute to the account and that he planned to use the loan to pay debts after the divorce was finalized. However, although Jeffrey testified that he planned to use the loan funds postmarriage, Jeffrey listed the debt from the loan as a marital debt, commingled the funds with his salary, and spent the majority of the loan on general expenses indistinguishable from other marital expenses before the marriage ended. Therefore, we do not find error in the trial court's determination that the remaining loan funds were marital property. Additionally, this account held at least some funds derived from Jeffrey's salary during the marriage. To the extent that Jeffrey argues Irene is not entitled to any portion of his income because she did not provide income, the assertion

is without merit. As described above, Irene's contributions to the marriage merit consideration even if she did not contribute financially to this account. See *id.* Applying the factors set forth in § 42-365, we find no abuse of discretion in the court's division of property and allocation of debt.

*Alimony.*

[15-18] A court entering a decree in a dissolution proceeding may order alimony under § 42-365 "as may be reasonable" with regard to the same factors listed above in the division of property section. While the criteria for reaching a reasonable award of alimony overlap with the criteria for dividing property reasonably, the two serve different purposes and are considered separately. § 42-365. In addition to the property division factors listed above, a trial court awarding alimony also considers the income and earning capacity of each party, as well as the general equities of each situation. See *Becker v. Becker*, 20 Neb. App. 922, 834 N.W.2d 620 (2013). In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.*

The Nebraska Supreme Court has recognized the potential disruption that occurs when someone immigrates for a marriage and has consequently upheld an award of alimony in this situation, in even short marriages. See *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015) (affirming alimony of $600 for 60 months following marriage of less than 3 years). In the present case, the parties had a short marriage, which weighs against a lengthy award of alimony. However, the other statutory and case law factors support the district court's award.

Although Jeffrey contributed the heavy majority of the income to the marriage, Irene contributed to the care of the parties' child, her child, and Jeffrey's child from a prior marriage. Irene also changed her employment status during the

marriage in reliance on Jeffrey's support when she left Kuwait, where she was employed, to move to the United States as a stay-at-home mother. Jeffrey currently enjoys considerably greater earning capacity than Irene. Irene will also have a unique need of support as she searches for work in a new country as a custodial parent. The district court properly considered these factors. Given our de novo review of the record pertaining to the relevant legal considerations, we find no abuse of discretion in the district court's award of alimony of $1,500 per month for 12 months. This award cannot be considered so untenable as to deprive Jeffrey of a substantial right. See *Becker v. Becker, supra*.

*Child Support.*

Jeffrey next assigns that the district court erred in awarding 6 months of child support and health insurance for his stepdaughter, Irene's daughter. Because an ex-stepfather has no duty to support a stepchild after he has divorced the child's mother unless he stands in loco parentis to the child, we vacate the award of child support and health insurance for Irene's daughter.

[19] The Nebraska divorce statutes do not impose a duty upon any individual other than a parent to pay for the support of minor children. *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000). In the absence of a statute, the common law does not impose a liability for support upon stepparents except in some instances where the stepparent voluntarily takes the stepchild into his or her family and assumes, in loco parentis, the obligations incident to a parental relationship. *Id.* Additionally, parties in a proceeding to dissolve a marriage cannot control by agreement the disposition of matters pertaining to minor children. *Id.*

In *Weinand*, the parties agreed that the husband stood in loco parentis to his stepdaughter and would pay child support in an amount determined by the court. On appeal, the Nebraska Supreme Court noted that the parties could not stipulate to matters involving minor children, found

that the husband no longer stood in loco parentis to the ex-stepdaughter, and vacated the district court's award of child support. *Id.* Although the husband in *Weinand* had acted as a parent to the minor child during the marriage and had obtained visitation since the separation, the court held that at the time of the dissolution, he had lived in a separate residence and had not performed all of the duties and obligations of a parent such as attending to the child's ongoing daily physical and emotional needs. *Id.* The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations. *Id.*

Here, there is no evidence that Jeffrey stands in loco parentis to Irene's daughter. There is no evidence that Jeffrey has sought even minimal visitation with the child, and certainly no evidence from which we could conclude that he assumed and discharged all of the obligations of parenting her. Accordingly, Nebraska law does not obligate Jeffrey to pay child support for his stepchild.

Jeffrey's agreement at trial to pay child support also does not obligate him under Nebraska law. At trial, Jeffrey submitted a child support calculation including Irene's daughter and agreed during testimony to pay child support. However, as the Nebraska Supreme Court held in *Weinand v. Weinand, supra*, a party's agreement to pay an unspecified amount of child support does not provide a district court with the authority to order support under the statutes or common law of Nebraska. Accordingly, we must vacate the order of child support as it pertains to Irene's daughter.

[20] While Jeffrey does owe Irene's daughter an obligation pursuant to the "I-864EZ" immigration contract form he signed, this contract does not obligate Jeffrey to pay child support under the Nebraska Child Support Guidelines. Further, no breach of contract action was properly before the trial court for enforcement of that contract. Jeffrey sponsored

Irene's daughter as an immigrant to the United States and contractually agreed with the federal government to support her at an income that is at least 125 percent of the federal poverty guidelines for her household size. Although this immigration contract provides an independent basis upon which Jeffrey is obligated to support Irene's daughter, the purpose of the contract and level of support it requires differ from those of the Nebraska Child Support Guidelines. The purpose of the federal immigration affidavit of support is to prevent immigrants from becoming public charges, while the purpose of the Nebraska Child Support Guidelines is "to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes." Neb. Ct. R. § 4-201. See *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). See, also, *In re Marriage of Dickson*, 337 P.3d 72 (Kan. App. 2014) (unpublished memorandum opinion listed in table of "Decisions Without Published Opinions") (noting that immigration affidavit of support does affect award of spousal support given difference in origin and purpose of each obligation).

[21] As the Nebraska Supreme Court has recognized, an affidavit of support signed as part of a federal immigration process is an independent contract that may be enforced separately under a breach of contract theory. See *Anderson v. Anderson, supra*. A court will not ordinarily order enforcement of an affidavit of support as part of a dissolution proceeding unless one of the parties specifically alleges a breach of contract claim. See *id.* See, also, *Yuryeva v. McManus*, No. 01-12-00988-CV, 2013 WL 6198322 (Tex. App. Nov. 26, 2013) (unpublished memorandum opinion). Although Irene's daughter could seek enforcement of Jeffrey's affidavit of support in a court of law, she did not do so here.

We therefore conclude that Jeffrey's immigration contract is a separately enforceable and independent contract, but is not a basis for requiring him to pay child support. See *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000). Given that

the district court's order has its own expiration date and uses the Nebraska Child Support Guidelines for the amount of support ordered, it cannot be said to be enforcing the immigration contract. Further, the immigration contract is between Irene's daughter, Jeffrey, and the federal government and is enforceable by those parties. See 8 U.S.C. § 1183a(a)(1)(B) (2012). Because Irene's daughter is not a party to this action and no breach has been asserted, the trial court's decree ordering child support cannot be construed as enforcement of Jeffrey's contractual obligation.

Similarly, we must vacate the district court's award of health insurance coverage of Irene's daughter. This is a form of support which Jeffrey is not required to provide under Nebraska dissolution statutes or the immigration contract for the reasons discussed above.

*Parenting Time.*

[22-24] Jeffrey argues that the district court erred in awarding him only 4 weeks of visitation with J.P. outside the United States instead of the 12 weeks he proposed. A parenting plan shall serve the best interests of the child. Neb. Rev. Stat. § 43-2929(1) (Cum. Supp. 2014). See 2015 Neb. Laws, L.B. 219. Determination of the best interests of the child includes consideration of the relationship of the minor child to each parent prior to the commencement of the action as well as the general health, welfare, and social behavior of the minor child. Neb. Rev. Stat. § 43-2923 (Cum. Supp. 2014). A reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). There is not a certain mathematical amount of visitation that is considered reasonable; the determination of reasonableness is to be made on a case-by-case basis. See *id*.

In this case, Irene has been the primary caretaker for J.P. during the marriage, and she has been the sole caretaker for

long stretches while she and J.P. lived in Nebraska and Jeffrey worked in Kuwait. She testified to a concern with Jeffrey's taking J.P. to Kuwait because of her inability to travel to Kuwait should an issue arise or J.P. not be returned according to the court order. Jeffrey testified that he had no intention of keeping J.P. in Kuwait against the court order but that he had only 30 days of vacation time to spend in the United States and needed visitation in Kuwait to maintain a relationship with J.P. Jeffrey's proposed parenting plan included 12 weeks of overseas "summer" parenting time, while Irene proposed no overseas parenting time.

Given our review of the record, including the special challenges posed by Jeffrey's work schedule overseas, the disruptions of international travel for a young child, and the relationship J.P. has with his parents, we do not find an abuse of discretion in the district court's award of 4 weeks of summer parenting time outside the United States. This assignment of error is without merit.

*Attorney Fees.*

[25] Jeffrey argues that the district court erred in awarding Irene an additional $5,000 of attorney fees in its decree. An award of attorney fees lies in the discretion of the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). An award of attorney fees depends on multiple factors including the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. See *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

Jeffrey notes that the attorney fees he incurred in this case are significantly higher than those incurred by Irene. This suggests that Irene's expenses are not unreasonable in amount. Jeffrey also argues that litigation costs for both were increased

by Irene's motion to continue the trial. However, the record reflects that the motion for continuance was based on Jeffrey's attorney's providing discovery documents 2 days before trial. Accordingly, the continuance does not influence the equities of the case in favor of either party. Given the disparity in income between the parties, we find no abuse of discretion in the district court's award of attorney fees.

*Failure to Grant Motion to Vacate*
*or Motion for New Trial.*

Jeffrey's only argument that the district court erred in denying his motions is that the court ruled from the bench and did not first take the matter under advisement. He cites no law to support his argument that it is error to rule from the bench, nor do we find any.

## CONCLUSION

We find that the district court had subject matter jurisdiction over the proceedings below, and we find no abuse of discretion in the court's division of property, award of alimony, award of parenting time, or award of attorney fees. The district court's order is affirmed as to these issues. However, we hold that despite Jeffrey's agreements to pay some amount of support for Irene's daughter, his ex-stepchild, the district court did not have the authority to order child support or health insurance for this child. Accordingly, we vacate the judgment as to the order of support and health insurance for Irene's daughter.

AFFIRMED IN PART, AND IN PART VACATED.