DEBRA SUE WEINAND, APPELLEE AND CROSS-APPELLANT,
v. MARK CHRISTOPHER WEINAND,
APPELLANT AND CROSS-APPELLEE.

616 N.W. 2d 1

Filed August 4, 2000. No. S-98-592.

Vikki S. Stamm and Kent A. Schroeder, of Ross, Schroeder & Romatzke, for appellant.

Marsha E. Fangmeyer, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

This case involves an appeal and cross-appeal from a decree of the district court dissolving the marriage of Debra Sue Weinand and Mark Christopher Weinand. In the dissolution decree, the district court concluded that it was in the best interests of Nicole Marie Weinand, a child born to Debra during the marriage, for Mark to maintain a relationship with Nicole. As part of its decree, the district court found that Mark was entitled to rights of reasonable visitation with Nicole, and the district court also ordered Mark to pay child support, notwithstanding a

judicial determination that Mark was not Nicole's biological father. Mark timely appealed. The primary question presented is whether an ex-stepparent who is awarded rights of reasonable visitation in a divorce decree must pay child support as a consequence of such an award. For the reasons that follow, we conclude that the district court erred in ordering Mark to pay child support on behalf of Nicole and, therefore, vacate the court's decree in that respect.

## FACTUAL BACKGROUND

Mark and Debra were married on December 9, 1990, and Debra gave birth to Nicole on July 19, 1995. Nicole lived with Mark and Debra until the parties separated in February 1997. During the time in which Mark, Debra, and Nicole lived in the same household, Mark treated Nicole as his own daughter and assumed the role of her father. Shortly after Mark and Debra separated, Bradley Alan Sinsel began to live with Debra and Nicole, and Sinsel has since become a father figure who contributes toward the support of Nicole. Household expenses are equally divided between Debra and Sinsel, except Sinsel does not contribute to day-care and medical expenses for Nicole.

On May 25, 1997, Debra filed a petition for dissolution of marriage in the district court for Buffalo County, in which she requested the court to grant her custody of Nicole and an award of permanent child support. While the dissolution matter between Mark and Debra was pending, the Buffalo County Attorney filed a paternity action against Sinsel, alleging that Sinsel was Nicole's biological father. Sinsel thereafter filed a petition in intervention in the dissolution proceeding, acknowledging that he was Nicole's biological father; Sinsel also filed a reply in the paternity action admitting the same, and subsequent genetic testing confirmed his acknowledgment. Throughout the divorce proceedings, both parties have continually acknowledged that Mark is not Nicole's natural father. The district court determined that Sinsel was Nicole's biological father and found that because he currently lives with and provides direct support for Nicole, no order of child support as to Sinsel was necessary or appropriate at that time.

Notwithstanding the separation from Debra and pending divorce action, Mark has maintained his relationship with

Nicole through visits on Tuesday and Thursday afternoons and on every other Sunday. Debra testified that she encouraged such visits because of the psychological bond between Nicole and Mark and that, in her opinion, the continued relationship was in Nicole's best interests. Since his separation from Debra, Mark had also voluntarily provided financial support for Nicole in the amount of approximately $300 per month.

Prior to trial, Mark and Debra signed a "Marital Settlement Agreement," in which the parties reached an amicable agreement as to the division of property. The district court subsequently approved this agreement as to the division of property as part of its decree of dissolution. The parties also agreed, as part of the "Marital Settlement Agreement," that Mark would pay child support to Debra in an amount fixed by the district court and that Mark stands in loco parentis to Nicole. The district court did not mention these provisions of the marital settlement agreement in its decree of dissolution, but, rather, made its own findings that it was in Nicole's best interests to continue her relationship with Mark and that Mark should be granted reasonable rights of visitation. The dissolution decree further provided that "because of his continuing relationship with [Nicole]," Mark should be required to pay some amount of child support.

Applying the Nebraska Child Support Guidelines, the district court determined the amount of child support by Mark to be $189.38 per month, which was adjusted to $133 per month. In reaching this monthly support amount, the district court considered the amount of child support that Sinsel, as Nicole's natural father, would be required to pay were he and Debra to separate. This amount was then added to Debra's monthly income as nontaxable income, after which Mark's obligation was determined. Mark thereafter filed a motion for a new trial, asserting that the district court erred when it ordered him to pay child support or, in the alternative, in its calculation of the amount of support ordered. Debra also filed a motion for new trial, alleging that the amount of support ordered was inadequate. Both parties' motions for a new trial were overruled. Mark timely appealed, and Debra cross-appealed. We moved this appeal to our docket pursuant to our authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Mark alleges, summarized and restated, that the district court erred in (1) requiring him to pay child support in order to maintain a relationship with Nicole, (2) calculating the amount of child support owed by Mark if the award of child support was proper, (3) denying his motion for a new trial, and (4) failing to order Nicole's biological father to pay child support.

In her cross-appeal, Debra's sole assignment of error is that the district court incorrectly calculated the amount of child support due from Mark.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000); *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Heald v. Heald, supra.* A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Id.*

## ANALYSIS

### Ex-Stepparent: Child Support

Mark initially contends that the district court erred in ordering him to pay child support as a consequence of the grant of visitation rights. In the instant case, it has been judicially determined that Mark is not Nicole's biological father; thus, Mark's divorce from Debra makes him the ex-stepfather of Nicole. The question presented in this appeal is whether the district court erred in ordering an ex-stepfather to pay child support for his former stepdaughter, when that child is now living with, and being supported by, both her natural mother and the man judicially determined to be her natural father.

■We have previously decided that a district court in a dissolution action, acting pursuant to Neb. Rev. Stat. § 42-364 (Reissue 1998), has jurisdiction to grant rights of visitation to an ex-stepparent when that ex-stepparent establishes that during the marriage, he or she acted as a parent to the stepchild. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). It is undisputed that Mark acted as a parent to Nicole during his marriage to Debra and is, therefore, entitled to seek visitation. No party has claimed that the district court erred in granting Mark reasonable rights to visit Nicole. This appeal, however, presents the next question in the analysis: Must an ex-stepparent who is awarded rights of reasonable visitation in a divorce decree pay child support as a consequence of such an award?

### STATUTORY PROVISIONS

■In the absence of a statute, it is clear that the common law does not impose a liability for support upon stepparents except in some instances where the stepparent voluntarily takes the stepchild into his or her family and assumes, in loco parentis, the obligations incident to a parental relationship. 1 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 7.2 (2d ed. 1987). Our analysis therefore begins with an examination of the applicable Nebraska statutes. Section 42-364 provides, in relevant part:

> (1) When dissolution of a marriage or legal separation is decreed, the court may include a parenting plan developed under the Parenting Act, if a parenting plan has been so developed, and such orders in relation to any minor child and the child's maintenance as are justified . . . .
>
> . . . .
>
> (6) In determining the amount of child support *to be paid by a parent*, the court shall consider the earning capacity of each parent and the guidelines provided by the Supreme Court . . . for the establishment of child support obligations.

(Emphasis supplied.)

The Nebraska divorce statutes do not impose a duty upon any individual other than a parent to pay for the support of minor

children. Although the term "parent," as used in § 42-364(6), is not specifically defined in the statutes, no issue is presented regarding the identification of Nicole's natural parents in the present case. Sinsel has acknowledged paternity of Nicole, and shortly after Mark and Debra separated, Sinsel began to live with Debra and Nicole, assuming and performing the duties of a natural parent. Moreover, the district court determined in these proceedings that Sinsel was Nicole's biological father, and the court entered no formal order of support with respect to Sinsel because the court found that he currently lives with and provides direct support for Nicole. The statutory duty to support Nicole is placed squarely upon her natural parents, i.e., Sinsel and Debra.

We, therefore, hold that in circumstances where a minor child is living with, and being supported by, both of his or her natural parents, the statutory responsibility for the child's support is solely that of the natural parents. § 42-364(6). Based on the language of § 42-364(6) and the determination by the district court that Nicole is living with, and being supported by, both of her natural parents, we conclude that Mark, as an ex-stepfather, can no longer be statutorily obligated for the support of his ex-stepdaughter, Nicole.

## IN LOCO PARENTIS

Notwithstanding the language of § 42-364(6), Debra asserts that Mark should be obligated to pay child support because he stands in loco parentis to Nicole. We first note that the district court properly disregarded Debra and Mark's stipulation that Mark stands in loco parentis to Nicole because parties in a proceeding to dissolve a marriage cannot control the disposition of matters pertaining to minor children by agreement. See *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). Debra nonetheless claims that Mark currently stands in loco parentis in light of the fact that Mark acted as Nicole's parent and provided support for her during his marriage to Debra and has since sought and obtained the right to maintain his relationship with Nicole through reasonable rights of visitation.

Debra's argument is without merit. We have stated that a person standing in loco parentis to a child is one who has put

himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and *the rights, duties, and liabilities of such person are the same as those of the lawful parent. Id.* The Parenting Act, Neb. Rev. Stat. § 43-2901 et seq. (Reissue 1993, Cum. Supp. 1996 & Supp. 1997), enacted in 1993, certainly provides guidance regarding the rights, duties, and liabilities that the Legislature considers important in parental functioning. Section 43-2903 states, in pertinent part:

For purposes of the Parenting Act:

. . . .

(2) Parenting functions shall mean those aspects of the parent-child relationship in which the parent makes fundamental decisions and performs fundamental functions necessary for the care and development of the minor child. Parenting functions shall include, but not be limited to:

(a) Maintaining a loving, stable, consistent, and nurturing relationship with the minor child;

(b) Attending to the ongoing needs of the minor child, including feeding, clothing, physical care and grooming, supervision, and engaging in other activities appropriate to the healthy development of the minor child within the social and economic circumstances of the family;

(c) Attending to adequate education for the minor child, including remedial or other special education essential to the best interests of the minor child;

(d) Assisting the minor child in maintaining a positive relationship with both parents and other family members;

(e) Assisting the minor child in developing and maintaining appropriate interpersonal relationships; and

(f) Exercising appropriate support for social, academic, athletic, or other special interests and abilities of the minor child within the social and economic circumstances of the family.

The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations. *McManus v.*

*Hinney*, 35 Wis. 2d 433, 151 N.W.2d 44 (1967) (citing *Rutkowski v. Wasko*, 286 A.D. 327, 143 N.Y.S.2d 1 (1955)). The assumption of the parental relationship is largely a question of intention which should not lightly or hastily be inferred. *Id.* The parental relationship should be found to exist only if the facts and circumstances show that the stepparent *means* to take the place of the lawful father or mother not only in providing support but also with reference to the natural parent's office of educating and instructing and caring for the general welfare of the child. See *id.*

In the instant case, the evidence reveals that Mark has not lived in the same household as Nicole and Debra since his separation from Debra in February 1997. Shortly thereafter, Sinsel began to reside with and provide financial support for Nicole. Since he began to live with Nicole, Sinsel has assumed the role of her father and is present on a daily basis to discharge all of the parental obligations. No matter how well intentioned, an ex-stepfather who visits his former stepdaughter on Tuesday and Thursday afternoons and on every other Sunday cannot, by definition, be deemed as standing in loco parentis. Simply put, the evidence shows that Mark has neither the legal means nor the intention of taking the place of the lawful father, Sinsel, in carrying out the day-to-day functions of a father as described in § 43-2903.

Courts that have addressed issues similar to the one before us have consistently determined that absent exceptional circumstances that invoke equitable principles, an ex-stepparent generally does not have a duty to support an ex-stepchild after the termination of the marriage to the child's biological parent. See, e.g., *Murphy v. Murphy*, 714 A.2d 576 (R.I. 1998); *Brinkerhoff v. Brinkerhoff*, 945 P.2d 113 (Utah App. 1997); *Dewey v. Dewey*, 886 P.2d 623 (Alaska 1994); *Drawbaugh v. Drawbaugh*, 436 Pa. Super. 57, 647 A.2d 240 (1994); *E.H. v. M.H.*, 512 N.W.2d 148 (S.D. 1994); *In re Marriage of Ulrich v. Cornell*, 168 Wis. 2d 792, 484 N.W.2d 545 (1992); *Stein v. Stein*, 831 S.W.2d 684 (Mo. App. 1992); *Hughes v. Creighton*, 165 Ariz. 265, 798 P.2d 403 (Ariz. App. 1990); *Portuondo v. Portuondo*, 570 So. 2d 1338 (Fla. App. 1990), *review denied* 581 So. 2d 166 (Fla. 1991); *Deal v. Deal*, 545 So. 2d 780 (Ala. App.

1989); *Nygard v Nygard*, 156 Mich. App. 94, 401 N.W.2d 323 (1986); *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986); *Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984); *Tedford v. Dempsey*, 437 So. 2d 410 (Miss. 1983); *R. D. S. v. S. L. S.*, 402 N.E.2d 30 (Ind. App. 1980); *Harper v. N. M. Dept. of Human Ser., Etc.*, 95 N.M. 471, 623 P.2d 985 (1980); *T . . . v. T . . .*, 216 Va. 867, 224 S.E.2d 148 (1976); *In re Marriage of Carney*, 206 N.W.2d 107 (Iowa 1973); *Jackson v. Jackson*, 278 A.2d 114 (D.C. 1971); *Taylor v. Taylor*, 58 Wash. 2d 510, 364 P.2d 444 (1961) (en banc). We agree. There are a few exceptional cases in which courts have relied upon equitable estoppel to hold a stepparent liable for the stepchild's support, where, for example, there was fraudulent activity on the part of the former stepparent and unusual hardship to the child if the support obligation were not imposed. See, e.g., 1 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 7.2 (2d ed. 1987); *Miller v. Miller, supra*.

The instant case, however, does not present any exceptional circumstances that would warrant the imposition of a child support obligation on Mark. Moreover, the record demonstrates that Mark does not currently stand in loco parentis to Nicole, nor can we conclude that he intends to do so in the immediate future. Because this appeal does not present the situation where an ex-stepparent voluntarily steps in and assumes, in loco parentis, all of the obligations incident to a parental relationship with the former stepchild, we determine that Debra's argument in this regard lacks merit.

## CONCLUSION

Based on the foregoing analysis, our de novo review of the record leads us to conclude that the district court abused its discretion when it ordered Mark to pay child support as a consequence of maintaining a visitation relationship with Nicole. We do commend Mark and Debra, and the district court, for considering the best interests of Nicole in establishing a visitation arrangement between Mark and Nicole. We note, however, that the visitation arrangement between Mark and Nicole is modifiable throughout the child's minority, and the continuation or modification of the visitation schedule should consistently be based on

what is in the best interests of Nicole. See *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991).

Because we conclude that the imposition of a child support obligation upon Mark was an abuse of discretion, we need not address Mark's other assignments of error. Further, because we have determined that Debra is not entitled to child support from Mark, her cross-appeal regarding the calculation of child support shall not be addressed. For these reasons, the portion of the decree ordering Mark to pay child support for Nicole in the sum of $133 per month shall be vacated; in all other respects, the decree of the district court shall be affirmed.

AFFIRMED IN PART, AND IN PART VACATED.