Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/09/2016 09:08 AM CST

ANNIE J. WINDHAM, APPELLANT, V. LAKISHA GRIFFIN
AND LEMAR MICTIZIC, ALSO KNOWN AS
ROBERT M. TIZIC, ALSO KNOWN AS
ROBERT M. McTIZIC, APPELLEES.

___ N.W.2d ___

Filed December 9, 2016.    No. S-15-1194.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Child Custody: Parental Rights.** The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child.

3. ____: ____. The right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody.

4. **Constitutional Law: Child Custody: Parental Rights.** A biological or adoptive parent's superior right to custody of the parent's child is acknowledgment that parents and their children have a recognized unique and legal interest in, and a constitutionally protected right to, companionship and care as a consequence of the parent-child relationship, a relationship that, in the absence of parental unfitness or a compelling state interest, is entitled to protection from intrusion into that relationship.

5. **Child Custody: Parental Rights.** The parental superior right to child custody protects not only the parent's right to the companionship, care, custody, and management of his or her child, but also protects the

child's reciprocal right to be raised and nurtured by a biological or adoptive parent.

6. **Parental Rights.** Parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection.

7. **Child Custody: Parental Rights.** Allowing a third party to take custody, even for a significant period of time, is not the equivalent to forfeiting parental preference.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Mark F. Jacobs, of Anderson, Bressman & Hoffman, P.C., L.L.O., for appellant.

No appearance for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

After Miracle G. was born in September 2011 to Lakisha Griffin, Annie J. Windham, the appellant, agreed to care for Miracle until Griffin was able to care for her child. Aided by law enforcement, Miracle was returned to Griffin in January 2013, but was later temporarily placed with Windham. Windham subsequently filed a complaint in which she alleged that she stood in loco parentis to Miracle and sought custody of the child. After trial, the district court awarded custody of Miracle to Griffin and awarded considerable unsupervised visitation to Windham. Windham appeals. We affirm.

## STATEMENT OF FACTS

Miracle was born to Griffin in September 2011. The day after her birth, Miracle went to live with Windham, who is Griffin's cousin, under the mutual agreement of Griffin and Windham. Griffin and Windham both testified at trial that they

understood that Windham would take care of Miracle until Griffin was able to care for her.

At the time Miracle was born, Griffin had five other children, and during the 4 years of this dispute, Griffin had additional children. At the time Miracle was born, Windham had one biological child and one child for whom she was the guardian and who resided with her. While this matter was pending before the trial court, Windham had one more child, and the child for whom she was a guardian was no longer living with her.

From September 2011 until January 8, 2013, Miracle lived with Windham. In January 2013, Griffin, accompanied by police, recovered the child. On January 18, Windham filed a complaint against Griffin and Miracle's father in which she alleged that she stood in loco parentis to Miracle and sought custody of the child. She also alleged that the parental rights of Griffin and Miracle's father should be terminated. On January 22, Windham filed a motion for temporary custody. A hearing was held on the motion, and Griffin did not appear at the hearing. On March 15, the district court filed a temporary order in which it granted temporary custody to Windham, subject to Griffin's supervised visitation.

On March 19, 2013, Griffin filed an answer in which she stated that it would be in Miracle's best interests for Griffin to have custody of her child. That same day, Griffin also filed a motion for a hearing to regain custody of Miracle.

On April 5, 2013, the district court filed an order in which it appointed a guardian ad litem for Miracle. On May 13, Windham filed an amended complaint in which she properly named Miracle's father.

On August 21, 2013, the district court filed an order in which it granted Griffin's motion to transfer the case to juvenile court. On November 26, the juvenile court filed an order in which it stated that the termination of parental rights was no longer an issue in the case and that therefore, the case should be transferred back to district court.

On November 14, 2013, Griffin filed a motion to modify the temporary order that had granted temporary custody to Windham and requested that custody of Miracle be placed with Griffin. After a hearing, the district court on December 9 denied Griffin's motion.

On April 9, 2014, the district court filed an order in which it modified its order appointing a guardian ad litem for the child and stated that "such appointment shall be as an attorney for the minor child."

On July 15, 2014, the district court filed a stipulated order which stated that Griffin and Windham were in the process of attempting to mediate the issues currently before the court. The court ordered that so long as the parties remained in mediation and they were each compliant with the terms and conditions of mediation, supervision of Griffin's parenting time would not be required. After nearly 1½ years, mediation was not successful.

The custody trial was held on October 21, 2015. Windham was represented by counsel, and Griffin appeared pro se. Miracle's father did not appear.

At trial, Griffin testified that at the time of trial, her children ranged in age from 2 weeks old to 10 years old and were living with her. Griffin testified that she worked at a daycare and that her non-school-aged children went to the same daycare at which she worked. Griffin acknowledged that she did not send money to Windham for Miracle. Griffin testified that after Miracle was born in September 2011, Griffin saw Miracle once a week or once every 2 weeks during 2011. In 2012, Griffin saw Miracle on average once a month. In January 2013, with the assistance of the police, Griffin retrieved Miracle, and Miracle lived with Griffin until Windham was awarded temporary custody. Griffin thereafter exercised supervised visits with Miracle. Griffin testified that once supervised visitation ended, Windham would not allow Griffin to see Miracle for unsupervised visits. At trial, Griffin

stated that because of Windham's interference, she had not seen Miracle in more than a year.

Windham generally testified that she lived with her boyfriend and her two children, ages 14 and 1. She stated that she worked as a busdriver. Windham testified that when Miracle was born, Griffin and Windham agreed that Windham would take care of Miracle until Griffin was "on her feet" and that then Windham was expected to return Miracle to Griffin. In contrast to Griffin's testimony, Windham stated that Griffin visited Miracle twice in 2011 and about four times in 2012. Windham testified that starting in 2013, Griffin exercised all her supervised parenting time, but that she missed "a couple of visits" in June. Windham stated that in the winter of 2013, Griffin's parenting time was not consistent. In contrast to Griffin's testimony, Windham testified that Griffin had not requested parenting time and that as a result, Griffin had not exercised parenting time in 2015.

After trial, the district court filed its order on November 19, 2015. The district court determined that Windham stood in loco parentis to Miracle and that therefore, Windham had standing to seek custody and visitation. This finding is not challenged on appeal.

In making the custody determination, the district court applied the parental preference doctrine. The court found that both Griffin and Windham were fit to perform the duties of a parent, and it found that Griffin had not forfeited her parental rights. The court then concluded that "awarding legal and physical custody of Miracle to Griffin is in the best interests of the child and consistent with parental preference." The court further determined that "it would be in Miracle's best interests for Windham to have unsupervised visitation rights to Miracle every other weekend, with two overnights, taking place from Friday evening until Sunday evening." Windham appeals.

## ASSIGNMENT OF ERROR

Windham claims, restated and summarized, that the district court erred when it granted custody of Miracle to Griffin.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

## ANALYSIS

For a variety of reasons, Windham claims that the district court erred when it granted custody of Miracle to Griffin. We reject Windham's arguments and affirm the order of the district court.

It is undisputed that Windham is neither the biological nor adoptive parent of Miracle and that Griffin is the biological mother of Miracle. As an initial matter, we note that the district court determined that Windham stood in loco parentis to Miracle and we accept this finding of the district court.

Windham acknowledges that Nebraska has adopted the parental preference doctrine in custody cases, but she nevertheless contends that because the district court found that she stood in loco parentis to Miracle, the court erred when it applied the parental preference doctrine to determine custody. Windham asserts that by virtue of her in loco parentis status, she and Griffin were "standing on equal ground" with respect to the custody dispute. Brief for appellant at 15. Windham further contends that the district court "should have simply undergone a best interests analysis" and that under such analysis, the court should have determined that it was in Miracle's best interests to award custody to Windham. *Id.* at 13.

Windham's argument that she is on equal footing with Griffin is derived in part from this court's explanation of the

doctrine of in loco parentis. We have explained the doctrine of in loco parentis wherein we have stated that

> "a person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent."

*Latham v. Schwerdtfeger*, 282 Neb. 121, 128, 802 N.W.2d 66, 72 (2011), quoting *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000). Referring to this explanation, Windham claims that with respect to Miracle, she has the "same rights" as Griffin. Brief for appellant at 15. We do not agree.

Our reference to "same rights" goes back at least to *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991), which relied in part on *Gribble v. Gribble*, 583 P.2d 64 (Utah 1978). In *Gribble*, the Supreme Court of Utah based a stepparent's standing to seek visitation upon an interpretation of a Utah divorce statute, then codified as Utah Code Ann. § 30-3-5 (1953). Using the in loco parentis doctrine as an interpretive tool, the court in *Gribble* determined that a "stepparent" serving as in loco parentis was included as a "parent" under the divorce statute and that the stepparent had standing. The ultimate source of standing was the statute, not the common-law doctrine of in loco parentis. The stepparent's rights under the statute in *Gribble* were the "same" as those of a "parent" under the statute.

In *Hickenbottom*, we recognized that the stepparent in *Gribble* was functionally a parent within the terms of the Utah statute and had "the same rights" thereunder. To the extent we have suggested in cases such as *Hickenbottom v. Hickenbottom, supra*; *Weinand v. Weinand, supra*; and *Latham v. Schwerdtfeger, supra*, that application of the common-law doctrine of in loco parentis confers the same rights as those of a lawful parent for all purposes, they are disapproved. For

completeness, we note that this limitation of "same rights" as used in *Gribble* is consistent with the reading of this aspect of *Gribble* by the Supreme Court of Utah in the subsequent case of *Jones v. Barlow*, 154 P.3d 808 (Utah 2007).

The foregoing limitation on in loco parentis status is consistent with our explanation that, unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated. See, *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000); *Weinand v. Weinand, supra*.

With respect to rights, in *Latham v. Schwerdtfeger, supra*, we determined that a nonbiological, nonadoptive individual who had in loco parentis status had the right to seek custody and visitation. But an individual standing in loco parentis, which is temporary in nature, is not the functional equivalent of a lawful parent for all purposes or in all contexts. This type of custody dispute is one such context. This is because the parental preference doctrine still applies to this type of custody determination and must be considered in such a dispute. Compare *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991) (stating in case where no party claimed in loco parentis status that biological mother who had validly relinquished her rights forfeited parental preference and stood on equal ground with prospective adoptive parents).

Contrary to Windham's suggestion that parental preference should be ignored due to her in loco parentis status, the Nebraska appellate courts have applied the parental preference doctrine in custody cases where one party is the biological or adoptive parent and another party has been found to have had in loco parentis status. See, e.g., *State on behalf of Combs v. O'Neal*, 11 Neb. App. 890, 662 N.W.2d 231 (2003) (determining that parental preference doctrine applied but that under facts of case, biological father had forfeited his superior parental rights and maternal grandmother who stood in loco parentis was awarded custody); *Cavanaugh v. deBaudiniere*, 1 Neb. App. 204, 493 N.W.2d 197 (1992)

(awarding custody to biological mother under parental preference doctrine, even though ex-stepfather stood in loco parentis and both parties were fit and proper persons to have custody). We conclude that in loco parentis status alone does not eclipse the superior nature of the parental preference doctrine in custody disputes.

[2,3] The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child. See *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992). See, also, *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980). We have stated that the right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody. *Id*. We have acknowledged the importance of the best interests of the child in resolving a child custody dispute, but "a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child." *In re Guardianship of D.J.*, 268 Neb. 239, 248, 682 N.W.2d 238, 245 (2004). We have referred to parental preference as "a presumption in favor of parental custody." *Id*. at 247, 682 N.W.2d at 245. See, also, *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015).

[4,5] We have recognized that the parental preference doctrine is grounded in the lawful parent's constitutional rights. See *id*. In *In re Guardianship of D.J.*, we stated:

"A biological or adoptive parent's superior right to custody of the parent's child is acknowledgment that parents and their children have a recognized unique and legal interest in, and a constitutionally protected right to,

companionship and care as a consequence of the parent-child relationship, a relationship that, in the absence of parental unfitness or a compelling state interest, is entitled to protection from intrusion into that relationship. Hence, the parental superior right to child custody protects not only the parent's right to the companionship, care, custody, and management of his or her child, but also protects the child's reciprocal right to be raised and nurtured by a biological or adoptive parent. . . ."

268 Neb. at 246, 682 N.W.2d at 244. We continue to adhere to the view that the parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere. See *id*.

In this custody case, the district court correctly determined that the parental preference doctrine applied. Because the parental preference doctrine applies, preference will be given to Griffin's superior right to custody unless she is shown to be unfit or to have forfeited her superior right to custody. After examining the evidence, the district court did not find Griffin to be unfit and it found that she had not forfeited her parental rights. On appeal, Windham does not challenge the district court's finding that Griffin is not unfit. However, on appeal, Windham claims that the district court erred when it determined that Griffin had not forfeited her parental rights. Applying the law to the facts of this case, we do not believe that the district court erred.

[6,7] This court has established that parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. *In re Guardianship of D.J., supra*. See, also, *Farnsworth v. Farnsworth*, 276 Neb. 653, 756 N.W.2d 522 (2008). We have also stated that allowing a third party to take custody, even for a significant period of time, is not

the equivalent to forfeiting parental preference. *Farnsworth v. Farnsworth, supra*.

The case of *State on behalf of Combs v. O'Neal*, 11 Neb. App. 890, 662 N.W.2d 231 (2003), is an example of a situation where the courts found that the biological father had forfeited his parental rights. In *State on behalf of Combs*, the child was born in 1988, and the Nebraska Court of Appeals noted that the father did not seek custody of the child until a paternity action was initiated and he was ordered to pay child support in 1999. The child's mother died when the child was 19 months old and the Court of Appeals stated that the child's maternal grandmother stood in loco parentis to the child, having raised the child for the 13 years since the child's birth, 11½ years of which were after the death of the biological mother. Based on this evidence, the Court of Appeals affirmed the trial court's finding that the father had forfeited his parental rights.

Unlike *State on behalf of Combs*, in this case, Griffin has appeared in Miracle's life since she was born. Griffin and Windham both testified that at the hospital after Miracle was born, they reached an understanding that Windham would temporarily care for Miracle until Griffin was able to care for her. Griffin testified that she suffered postpartum depression, but that from a few days after Miracle's birth, her long-term goal was to have custody of Miracle. The record shows that Griffin visited Miracle during Miracle's first year of life. In January 2013, when Miracle was approximately 15 months old, Griffin sought reunification and, with the assistance of law enforcement, brought Miracle to her home. Miracle lived with Griffin until Windham got a temporary order from the district court granting temporary custody of Miracle to Windham. Since at least January 2013, Griffin testified she consistently sought and requested custody of Miracle. Griffin encouraged her other children to develop relationships with Miracle, and she exercised her visitation with Miracle until she was unable to find a relative to supervise visitation in late 2014 or early 2015.

Although Griffin initially placed Miracle in Windham's care after the child's birth, entrusting another to raise a child does not generally rise to the forfeiture of parental rights. We have stated that allowing a third party to take custody, even for a significant period of time, is not the equivalent to forfeiting parental preference. See *Farnsworth v. Farnsworth, supra*. We have noted that a parent's decision to place a child in "the capable and loving hands" of a relative when the parent is unable to care for the child can be evidence of the parent's ability to adequately provide for the child's care. See *In re Guardianship of D.J.*, 268 Neb. 239, 251, 682 N.W.2d 238, 247 (2004).

Based on this and other evidence, the district court found that Griffin had not forfeited her parental rights. Upon our de novo review of the record, we find no error with the district court's determination that Griffin did not forfeit her parental rights and that, as such, she retained her superior right to custody of Miracle.

The district court stated in its order that awarding custody to Griffin was consistent with the parental preference doctrine and that it was in Miracle's best interests. We find no error in the district court's approach. While preference must be given to a biological or adoptive parent's superior right to custody where the parent is not unfit and has not forfeited his or her parental rights, a court also considers the child's best interests in making its custody determination. See *In re Guardianship of D.J., supra*.

As noted above, Windham suggests that we revise our legal framework. She urges us to examine the merits as though the parties were standing on equal footing and the outcome would be determined only by reference to best interests. Although we are aware of instances where courts have determined that the best interests of the child defeated the lawful parent's preference, we view these cases as exceptional. For example, in *Gorman v. Gorman*, 400 So. 2d 75 (Fla. App. 1981), the trial court found both the biological father and the ex-stepmother

to be fit and proper parents, but awarded custody of the child to the ex-stepmother. On appeal, the biological father argued that because he was the child's natural father and he had been found to be a fit and proper parent, he should have been awarded custody of the child. The appellate court rejected the father's claim, noting that the child had a strong bond with his ex-stepmother and that the child "felt like he never had a father because his father was often away from home, was frequently intoxicated, and physically abused and blamed this child for the death of his natural mother [during childbirth]." *Gorman v. Gorman*, 400 So. 2d at 78. The appellate court noted that "[i]n finding the father a fit and proper parent the trial judge was charitable." *Id*. The appellate court affirmed the trial court's determination that it was in the child's best interests for the ex-stepmother to have custody rather than the lawful parent. The facts present in *Gorman* are not present in this case, and the district court ably considered best interests and stated in its order that it was in Miracle's best interests for Griffin to have custody.

To the extent that Windham argues that it is in Miracle's bests interests for Windham to be awarded custody because she is able to provide more amenities and a better life for Miracle, this is not an appropriate focus for the custody determination in this case. In *In re Guardianship of D.J.*, 268 Neb. at 247, 682 N.W.2d at 245, we stated that "in custody disputes between a parent and nonparent, courts turn to the parental preference principle because the best interests standard, taken to its logical conclusion, would place the minor children of all but the 'worthiest' members of society in jeopardy of a custody challenge." See, also, *Watkins v. Nelson*, 163 N.J. 235, 748 A.2d 558 (2000); *Worden v. Worden*, 434 N.W.2d 341, 342 (N.D. 1989) (stating that "[a]bsent exceptional circumstances the natural parent is entitled to custody of the child even though the third party may be able to offer more amenities"). We have observed that the existence of a "'better'" alternative home cannot overcome the constitutionally required presumption that

reuniting the child with the parent is best. See *In re Interest of Xavier H.*, 274 Neb. 331, 350, 740 N.W.2d 13, 26 (2007). We have stated: "'"The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide."'" See *id.* at 350-51, 740 N.W.2d at 26, quoting *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

We additionally note that although the district court found it was in Miracle's best interests for Griffin to have custody of her child, the court recognized, as do we, the significant bond established between Windham and Miracle and Windham's demonstrated care of Miracle. Because of this bond, the district court awarded Windham considerable unsupervised visitation and found that this visitation was in Miracle's best interests. We agree that the award of such visitation is appropriate.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order granting custody of Miracle to Griffin.

Affirmed.