Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/19/2019 09:06 AM CST

- 923 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

State of Nebraska on behalf of Lilliana L.,
a minor child, appellee, v. Hugo C., appellant,
and Theresa L., intervenor-appellee.

___ N.W.2d ___

Filed February 12, 2019.    No. A-17-1316.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Parent and Child: Words and Phrases.** A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption.

3. ____: ____. The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations.

4. **Parent and Child: Intent.** The assumption of the parental relationship is largely a question of intention which should not lightly or hastily be inferred.

5. **Parent and Child.** The parental relationship should be found to exist only if the facts and circumstances show that the individual means to take the place of the lawful father or mother not only in providing support but also with reference to the natural parent's office of educating and instructing and caring for the general welfare of the child.

6. **Appeal and Error.** Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court.

7. **Child Custody: Parental Rights.** The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved

- 924 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

in the controversy, a fit biological or adoptive parent has a superior right to custody of the child.

8. ____: ____. The right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody.

9. ____: ____. The best interests of the child are important in resolving a child custody dispute, but a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child.

10. **Child Custody: Parental Rights: Presumptions.** Parental preference creates a presumption in favor of parental custody.

11. **Child Custody: Parental Rights: Proof.** The parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere.

12. **Child Custody: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing which has caused, or probably will result in, detriment to a child's well-being.

13. **Child Custody.** Evidence of unfitness should be focused upon a parent's ability to care for a child, and not any other moral failings a parent may have.

14. ____. Evidence of unfitness should be focused upon a parent's present ability to care for a child, and evidence of a parent's past failings is pertinent only insofar as it suggests present or future faults.

15. **Child Custody: Parental Rights.** The quantum of proof necessary to prove unfitness is analogous to the proof necessary to terminate parental rights.

16. ____: ____. While preference must be given to a biological or adoptive parent's superior right to custody where the parent is not unfit and has not forfeited his or her parental rights, a court also considers the child's best interests in making its custody determination.

Appeal from the District Court for Burt County: John E. Samson, Judge. Affirmed.

Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellant.

- 925 -

Nᴇʙʀᴀꜱᴋᴀ Cᴏᴜʀᴛ ᴏꜰ Aᴘᴘᴇᴀʟꜱ Aᴅᴠᴀɴᴄᴇ Sʜᴇᴇᴛꜱ
26 Nᴇʙʀᴀꜱᴋᴀ Aᴘᴘᴇʟʟᴀᴛᴇ Rᴇᴘᴏʀᴛꜱ
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

Michael J. Tasset and Denise E. Frost, of Johnson & Mock, P.C., L.L.O., for intervenor-appellee.

Pɪʀᴛʟᴇ, Bɪꜱʜᴏᴘ, and Aʀᴛᴇʀʙᴜʀɴ, Judges.

Pɪʀᴛʟᴇ, Judge.

## INTRODUCTION

Hugo C., the biological father of Lilliana L. (Lilli), born in April 2012, appeals from an order of the district court for Burt County awarding custody of Lilli to Theresa L., Lilli's maternal aunt. Hugo challenges the court's determining that Theresa had standing to seek custody based on the in loco parentis doctrine, allowing Theresa to intervene when she had "unclean hands," and awarding her custody of Lilli. Based on the reasons that follow, we affirm.

## BACKGROUND

This case is the third case filed regarding custody and support for Lilli. The first case was filed by the State on January 23, 2014, against Hugo for child support because Melanie L., Lilli's biological mother, had applied for medical assistance benefits for Lilli. Hugo denied that he was Lilli's father at that time. Court-ordered genetic testing was ordered, and on August 4, the results showed that Hugo was Lilli's biological father.

The second case was filed by Melanie in September 2014. She filed a separate action for sole legal and physical custody of Lilli. The first case was dismissed as a result. Melanie then dismissed her case on August 13, 2015, the same day trial was to begin.

The third and present case was commenced on August 27, 2015, when the State filed a second complaint to establish support against Hugo. Hugo was ordered to pay child support in March 2016. On March 16, Hugo filed a "Petition for Custody" of Lilli. Melanie died suddenly 2 months later on June 12. The cause of her death is not clear from the record. Theresa testified that Melanie was born with a heart defect and was on

- 926 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

heart medication at the time of her death. One of Melanie's brothers testified that based on the autopsy, the cause of her death was inconclusive. Following Melanie's death, Lilli began living with Theresa at her home in Colorado.

On August 29, 2016, after learning that Lilli was living in Colorado with Theresa, Hugo filed a motion for "Emergency Custody Determination" seeking temporary custody of Lilli. Theresa filed a complaint to intervene and a motion for temporary custody. The trial court sustained Theresa's motion to intervene. The court overruled Hugo's motion for emergency custody and allowed Lilli to continue living with Theresa. The court also ordered therapeutic counseling sessions and parenting sessions between Hugo and Lilli. Hugo met Lilli for the first time in September 2016, when she was 4½ years old, which was 2 years after he knew that he was Lilli's biological father.

On May 12, 2017, Theresa filed an answer and cross-claim alleging that Hugo was not a fit and proper person to have custody of Lilli and that an award of custody to Hugo was not in Lilli's best interests. Theresa sought legal and physical custody of Lilli and permission for Lilli to reside in Colorado.

Trial was held in July and September 2017. The evidence showed that after Melanie died, her family discussed who would be in the best position to care for Lilli. The family decided that Lilli should live with Theresa. Theresa testified that Hugo was never considered as a potential caregiver for Lilli because he had never met her. Theresa testified that neither she nor her family tried to hide the fact from anyone that Lilli was going to live with Theresa in Colorado. Theresa took Lilli to her home in Colorado on July 1, 2016, where she continued to live at the time of trial.

There was evidence that Theresa had a relationship with Lilli before Melanie died. After moving to Colorado in 2013, Theresa made multiple trips per year to Nebraska to visit family, which trips would include spending time with Lilli. Theresa testified that Lilli knew who she was when she came

- 927 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

to Nebraska for Melanie's funeral. There was also testimony by Theresa and her two brothers that Melanie wanted Theresa to care for Lilli if Melanie ever became unable to care for her.

When Theresa returned to Colorado with Lilli, Theresa's main focus was to get Lilli to a doctor. Lilli suffers from chronic gastrointestinal issues, and at that time, Lilli was bloated, had dark circles under her eyes, and was experiencing severe digestive problems. Theresa testified that she could not get Lilli in to see a doctor without Hugo's consent to obtain medical treatment for Lilli. Theresa called Hugo and told him she was caring for Lilli and needed his consent for medical treatment. Hugo did not express concern that Lilli was in Colorado with Theresa. The next contact Theresa had with Hugo was in early August 2016, when Hugo called and accused Theresa of kidnapping Lilli and wanted her to drop off Lilli in a parking lot in Omaha, Nebraska, so he could pick her up.

There was much evidence presented in regard to Hugo's past, including his criminal history. The evidence showed that Hugo was charged with a felony drug crime in 2004 as a result of law enforcement officers' seizing methamphetamine, cocaine, and marijuana from his house. He was allowed to participate in a drug court program, which he successfully completed, and the charge was dismissed. He was also investigated for dealing drugs in 2011, but no charges were filed. In 2007, Hugo pled guilty to assaulting his son, who was 7 years old at the time, as a result of "spank[ing] him with a belt" which left bruises on his buttocks and thighs. Hugo also had multiple convictions for driving offenses, including driving with a suspended license and reckless driving.

Hugo had been married and divorced four times and three of his ex-wives had sought and received domestic violence protection orders against him at various times. Hugo testified that he thought he and Melanie started dating in 2010 and that she moved in with him 8 or 9 months later. At some point, Melanie

- 928 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

moved out, but she and Hugo continued to see each other on occasion. Hugo's last contact with Melanie was on August 23, 2011, when she sent him an email stating that she was pregnant and claiming that he was not the baby's father.

Dr. Carol Lay, a psychologist who began having therapy sessions with Lilli in September 2016, testified that Lilli first met Hugo through "Skype" in October 2016 and that in-person visits started in November 2016. She testified that she observed a marked shift in Lilli's demeanor and play themes when she began having in-person contact with Hugo: Lilli became more aggressive, fearful, angry, and resentful. She testified that Lilli was "attached" to Theresa and Theresa's fiance and that Lilli did not know how to "process" Hugo's appearance in her life. Lay testified that Lilli was concerned that Hugo would "take her away" from Theresa and Theresa's fiance.

In June 2017, Hugo had an 8-hour visit on two consecutive days, the longest visits that had taken place. Lay testified that after these visits, Lilli "was more agitated and . . . disorganized" and Lilli feared that she was going to lose Theresa and Theresa's fiance, as well as her home.

According to Lay, if Lilli's bond with Theresa and Theresa's fiance is broken, Lilli will be "exceedingly vulnerable to physical and mental health problems in adulthood, not to mention a compromised development in many areas of [her] life; learning, behaviors, school achievement, at not just an emotional level, but also at a biological level." She further testified that based on Lilli's exposure to adverse childhood events, she is "a highly vulnerable child in terms of trusting [others], in terms of believing that the world is a safe place and that she will be taken care of and protected." Lilli's anxiety and exposure to adverse childhood events had already caused developmental delay in her fine motor skills.

Lay testified that if Lilli is going to develop "a solid relationship [with Hugo] based on attachment," it needs to progress at Lilli's rate, and not based upon the wishes or demands of adults. She testified that "days-long overnight" parenting

- 929 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

time with Hugo was "risky" at that time and could be damaging to Lilli, because Lilli is afraid that Hugo will be angry with her if she misses Theresa, and Lay did not believe that Hugo had the capacity to comfort Lilli if she is in distress and she is still somewhat fearful at times. Lay testified that maintaining this state of fear increases anxiety in a way that is not good for Lilli emotionally or physically. Lay further testified that awarding Hugo custody at the time of trial would traumatize Lilli and was not in her best interests. She stated that Lilli was "a vulnerable child who should be protected from being retraumatized."

At the time of trial, Hugo had never contacted Lay to ask about Lilli's progress in therapy or to ask what he could do to help Lilli. Lay found this concerning.

Terry James-Banks, a psychotherapist, supervised several visits between Lilli and Hugo in 2017. She testified that it was not in Lilli's best interests to have overnight visits with Hugo at that time. Her opinion was based on the fact that at the end of the 8-hour parenting time she observed in June 2017, Lilli was ready and anxious to go back to Theresa's home. Lilli also showed insecurity in her relationship with Hugo. James-Banks stated that building a relationship with Lilli would take time and patience and that forcing her into overnight visits before she was ready would increase her distress and her tendency to resist it. James-Banks testified that Lilli is very vulnerable and that disruption of "a second primary attachment relationship" would create a sense of loss, further grief, and potential mental health issues. She further testified that another adverse childhood experience could cause Lilli to suffer permanent or long-term emotional damage.

Following trial, the trial court entered an order on November 22, 2017. The trial court stated that it did not find Hugo's testimony credible, because there were "numerous occasions where [he] minimized, could not remember, or his in-court testimony was contradicted by his previous statements or other credible witnesses." The trial court awarded Theresa sole legal and

- 930 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

physical custody of Lilli, subject to parenting time with Hugo, and allowed her to permanently remove Lilli to Colorado. The court found that it was in Lilli's best interests to remain in Theresa's sole legal and physical custody notwithstanding the parental preference principle and that "it would be harmful to [Lilli's] physical and mental health if the legal custody and possession of the minor child is awarded to [Hugo]." The trial court also established a parenting plan awarding Hugo parenting time with Lilli. Hugo does not challenge the terms of the parenting plan.

## ASSIGNMENTS OF ERROR

Hugo assigns that the trial court erred in (1) finding that Theresa stood in loco parentis and had standing to seek custody of Lilli, (2) allowing Theresa to intervene in the action despite evidence of her "unclean hands," and (3) awarding Theresa custody.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016).

## ANALYSIS

*In Loco Parentis.*

Hugo first argues the trial court erred in finding that Theresa stood in loco parentis to Lilli and that therefore, she had standing to bring an action for custody of Lilli.

[2] A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption. *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000), *disapproved on other grounds, Windham v. Griffin, supra*.

- 931 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

[3-5] The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations. *Weinand v. Weinand, supra*. The assumption of the parental relationship is largely a question of intention which should not lightly or hastily be inferred. *Id.* The parental relationship should be found to exist only if the facts and circumstances show that the individual means to take the place of the lawful father or mother not only in providing support but also with reference to the natural parent's office of educating and instructing and caring for the general welfare of the child. See *id.*

The Parenting Act, Neb. Rev. Stat. § 43-2920 et seq. (Reissue 2016 & Cum. Supp. 2018) defines parenting functions. Specifically, § 43-2922 states:

For purposes of the Parenting Act:

. . . .

(17) Parenting functions mean those aspects of the relationship in which a parent or person in the parenting role makes fundamental decisions and performs fundamental functions necessary for the care and development of a child. Parenting functions include, but are not limited to:

(a) Maintaining a safe, stable, consistent, and nurturing relationship with the child;

(b) Attending to the ongoing developmental needs of the child, including feeding, clothing, physical care and grooming, health and medical needs, emotional stability, supervision, and appropriate conflict resolution skills and engaging in other activities appropriate to the healthy development of the child within the social and economic circumstances of the family;

(c) Attending to adequate education for the child, including remedial or other special education essential to the best interests of the child;

. . . .

- 932 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

(f) Assisting the child in developing skills to maintain safe, positive, and appropriate interpersonal relationships; and

(g) Exercising appropriate support for social, academic, athletic, or other special interests and abilities of the child within the social and economic circumstances of the family.

The evidence established that Theresa fulfilled all of these functions for Lilli after Melanie died. Theresa brought Lilli into her home a few weeks after Melanie's death in June 2016, and Theresa continued to care for Lilli at the time of trial, 1 year later. She has provided Lilli with a nurturing and stable living environment. Theresa had been caring for Lilli's day-to-day physical needs, was getting her the medical care she needs and having her follow a restricted diet due to her gastrointestinal problems, and meeting her emotional needs. She also found a therapist for Lilli to help her deal with Melanie's death. Theresa and Lilli have a close relationship, and Lilli has an "attachment bond" with Theresa. Further, Theresa is a maternal aunt to Lilli and had a familial relationship with her prior to the death of Melanie. We conclude that the trial court did not err in finding that Theresa stood in loco parentis to Lilli and had standing to seek custody of Lilli.

*Unclean Hands.*

Hugo next assigns that the court erred in allowing Theresa to intervene in the action despite evidence of her "unclean hands." He alleges that the doctrine of unclean hands applies because Theresa removed Lilli from her home and family in Nebraska and failed to provide adequate notice to the court or Hugo.

[6] This is the first time Hugo has raised an "unclean hands" argument; the argument was not raised to the trial court. Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court. *In re Interest of Paxton H.*, 300 Neb. 446, 915 N.W.2d 45

- 933 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

(2018). Accordingly, we do not address this assignment of error further.

*Awarding Theresa Custody.*

Lastly, Hugo assigns that the trial court erred in awarding Theresa custody of Lilli. He specifically takes issue with the court's finding that the presumption of parental preference was negated based on "'some showing of unfitness'" and the best interests of Lilli. Brief for appellant at 14.

[7-10] The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). The right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody. *Id*. The Nebraska Supreme Court has acknowledged the importance of the best interests of the child in resolving a child custody dispute, but "'a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child.'" *Id.* at 287, 887 N.W.2d at 716, quoting *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004). The Supreme Court has referred to parental preference as a presumption in favor of parental custody. *Windham v. Griffin, supra.*

[11] The parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere. *Id.*

- 934 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

[12-15] In support of his assignment that the trial court erred in awarding Theresa custody, Hugo first claims that the trial court impermissibly "broaden[ed] the standard" of unfitness previously stated by the Supreme Court. Brief for appellant at 23. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). Evidence of unfitness should be focused upon a parent's ability to care for a child, and not any other moral failings a parent may have. See *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011). Further, evidence of unfitness should be focused upon a parent's present ability to care for a child, and evidence of a parent's past failings is pertinent only insofar as it suggests present or future faults. *Id.* The Supreme Court has analogized the quantum of proof necessary to prove unfitness to the proof necessary to terminate parental rights. *Id.*

The trial court found that some of Hugo's past behavior and his "minimization and inconsistent testimony" was concerning, but that it could not conclude that Theresa met her burden of proof that Hugo was unfit to parent Lilli. The trial court went on to note that the U.S. Supreme Court has stated:

> "We have little doubt that the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without *some showing of unfitness* and for the sole reason that to do so was thought to be in the children's best interest."

Quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978) (emphasis supplied). The trial court then stated that "if the proper standard is 'some showing of unfitness,' then [Theresa had] met her burden of proof." Hugo contends that based on this statement, the trial court used a standard different from that set out by the U.S.

- 935 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

Supreme Court and erred in finding there was any showing of unfitness.

We determine that the trial court simply noted that there was some evidence of unfitness based on Hugo's past and his testimony at trial, but ultimately concluded that under Nebraska case law, Theresa had not proved that Hugo was unfit to the extent necessary to negate the preference given to Hugo as Lilli's lawful parent. Further, if the trial court had concluded that "'some showing of unfitness'" was sufficient to defeat the parental preference, it would have found it unnecessary to address whether Lilli's best interests defeated the parental preference doctrine. It is clear from the trial court's order that the court based its decision to award Theresa custody on Lilli's best interests, and not on a finding that Hugo was unfit or had forfeited his rights.

In regard to best interests, the court found that it was in Lilli's best interests to remain in Theresa's sole legal and physical custody notwithstanding the parental preference principal and that "it would be harmful to [Lilli's] physical and mental health if the legal custody and possession of the minor child is awarded to [Hugo]." Hugo takes issue with this finding.

[16] While preference must be given to a biological or adoptive parent's superior right to custody where the parent is not unfit and has not forfeited his or her parental rights, a court also considers the child's best interests in making its custody determination. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016), citing *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

As previously stated, the parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere. *Windham v. Griffin, supra.*

The evidence showed that Hugo did not have any relationship with Lilli before Melanie died. He met Lilli for the

- 936 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

first time in September 2016, when Lilli was 4½ years old, which was 2 years after he knew that he was Lilli's biological father. Theresa, in contrast, had a relationship with Lilli before Melanie died. Lilli started living with Theresa in July 2016, and she continued to live with her at the time of trial. Lilli has an "attachment bond" with Theresa, and there was evidence that breaking that bond would be detrimental to Lilli.

According to Lay, if Lilli's bond with Theresa and Theresa's fiance is broken, Lilli would be vulnerable to physical and mental health problems in adulthood, as well as compromised development in many areas of her life on emotional and physical levels. Lay testified that if Lilli is going to develop "a solid relationship [with Hugo] based on attachment," it needs to progress at Lilli's rate, and not based upon the wishes or demands of adults. Lay further testified that awarding Hugo custody at the time of trial would traumatize Lilli and was not in her best interests. Lay stated that Lilli was "a vulnerable child who should be protected from being retraumatized."

James-Banks testified that at the end of the 8-hour parenting time she observed, Lilli was ready and anxious to go back to Theresa's home. She also testified that Lilli was insecure in her relationship with Hugo. James-Banks stated that building a relationship with Lilli would take time and patience and that forcing her into overnight visits before she was ready would increase her distress and her tendency to resist it. James-Banks testified that Lilli was very vulnerable and that disruption of "a second primary attachment relationship" would create a sense of loss, further grief, and potential mental health issues. She further testified that another adverse childhood experience could cause Lilli to suffer permanent or long-term emotional damage.

While neither we nor the district court found Hugo to be unfit, it is nonetheless appropriate to consider, in conjunction with this testimony, Hugo's prior conviction for child abuse and his history of having protection orders entered against him

- 937 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF LILLIANA L. v. HUGO C.
Cite as 26 Neb. App. 923

by former spouses. This evidence, coupled with Hugo's past lack of interest in maintaining a relationship with Lilli, gives us concern that a grant of custody to Hugo would place Lilli at an even higher risk for experiencing the type of adverse childhood experience that the mental health providers fear would cause permanent or long-term emotional damage.

We conclude that the trial court did not err in finding that the parental preference in favor of Hugo was negated by Lilli's best interests and in awarding Theresa custody. We further note that the trial court's award of custody to Theresa does not terminate Hugo's parental rights to Lilli. The trial court implemented a parenting plan awarding Hugo parenting time with Lilli.

## CONCLUSION

We conclude that the trial court did not err in finding that Theresa had standing to seek custody based on the in loco parentis doctrine and did not err in awarding Theresa custody of Lilli.

Affirmed.