Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/16/2018 08:13 AM CDT

In re Change of Name of Whilde.
Lillias Delong Dulles Whilde, a minor,
by and through her mother and next
friend, Hannah Whilde, appellee, v.
Margaret Whilde, appellant.

___ N.W.2d ___

Filed December 22, 2017.    No. S-17-299.

1. **Motions to Vacate: Time.** In a civil case, a court has inherent power
   to vacate or modify its own judgments at any time during the term at
   which those judgments are pronounced, and such power exists entirely
   independent of any statute.
2. ____: ____. The decision to vacate an order at any time during the term
   in which the judgment is rendered is within the discretion of the court;
   such a decision will be reversed only if it is shown that the district court
   abused its discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when
   the trial court's decision is based upon reasons that are untenable or
   unreasonable or if its action is clearly against justice or conscience,
   reason, and evidence.
4. **Motions to Vacate: Judgments: Time.** In the absence of an applicable
   rule to the contrary, a motion asking the court to exercise its inherent
   power to vacate or modify its own judgment does not toll the time for
   taking an appeal.

Appeal from the District Court for Otoe County: Michael A.
Smith, Judge. Affirmed.

Anthony W. Liakos, of Govier, Katskee, Suing & Maxell,
P.C., L.L.O., for appellant.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C.,
L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, and Stacy, JJ., and Riedmann, Judge.

Miller-Lerman, J.

## NATURE OF CASE

Margaret Whilde appeals the order of the district court for Otoe County, Nebraska, which overruled a motion to vacate the court's earlier order which granted a request to change the name of a minor child. She argued that she was entitled to notice by certified mail as a "noncustodial parent" under Neb. Rev. Stat. § 25-21,271(2) (Reissue 2016), and that because she had not received such notice, the order changing the child's name should be vacated. We affirm the district court's order overruling Margaret's motion to vacate.

## STATEMENT OF FACTS

The minor child at issue in this case was born in January 2010. On December 21, 2016, the child's biological mother, Hannah Whilde, filed on behalf of the child a petition under § 25-21,271 to change the child's name. The request was to change the child's two middle names, "Delong Dulles," to two new middle names, "Coco Nadine," and to change her last name from "Whilde" to Hannah's family name of "Hoch"; no request was made to change the child's first name. After Hannah filed the petition, she caused notice of the filing of the petition to be published in a newspaper of general circulation in Otoe County for 2 consecutive weeks.

The district court held a hearing on the petition for name change on January 24, 2017. At the hearing, Hannah offered into evidence proof of publication of the notice. Hannah testified at the hearing that she was the natural mother of the child, that there was no noncustodial parent with respect to the child, and that there was "no natural father" involved because the child was "the product of a sperm donation." Hannah further testified regarding the reasons for the name change. She testified that the name change was not for the purpose

of avoiding creditors or hiding the child. She testified instead that the two middle names she proposed were a nickname by which the child had generally been known since birth and the name of "a beloved great-grandmother" who was "very close to" the child. Hannah did not testify at the hearing regarding the reasons for changing the child's last name; however, in the petition, Hannah had stated that she wanted the child to have Hannah's family name and that Hannah was changing her own last name from "Whilde" back to her family name. After Hannah's testimony, the court stated that it found that Hannah had complied with the statute and that there was no good reason the order to change the child's name should not be granted.

The court filed an order that same day in which it stated, inter alia, that it found "statutory notice to have been given pursuant to [§] 25-21,271(2)," that no objection had been filed, that there was no reason to deny the requested name change, and that it was in the child's best interests to have her name changed. The court therefore on January 24, 2017, ordered the child's name to be changed to the name requested by Hannah.

On February 7, 2017, Margaret filed a motion asking the court to vacate its January 24 order changing the child's name. Margaret stated in the motion that she was filing the motion pursuant to Neb. Rev. Stat. § 25-2001 (Reissue 2016). She alleged as follows: Pursuant to an order filed in the district court for Travis County, Texas, on September 27, 2012, Margaret had been appointed "Temporary Non-Parent Possessory Conservator" of the child and, as a result of such status, had been awarded certain rights and duties with respect to the child. In a modification of custody case separate from the instant name change action, on June 6, 2014, Hannah had filed in the district court for Otoe County an application to register the Texas judgment and a complaint to modify said judgment. After a trial at which both Hannah and Margaret appeared in August 2016 in the modification of custody case,

the district court on December 16 had filed an opinion and order of modification in which it found that "an in loco paren-tis relationship did exist at one time between" Margaret and the child. The court, however, had ultimately ordered that sole legal and physical custody of the child be awarded to Hannah and that Margaret be granted no rights of custody or visitation with the child. On January 10, 2017, Margaret filed a notice of appeal of the district court's December 16, 2016, order modifying the child's custody. No supersedes bond or other stay of the modification and custody ruling in the other action had been implemented. At the time Margaret filed the motion to vacate in this name change case, the appeal of the custody order was pending in the Nebraska Court of Appeals. That appeal was moved to the docket of this court as case No. S-17-045.

Margaret further alleged that at no time prior to the January 24, 2017, hearing in this case had she been provided notice of the request to change the child's name. She argued that she was a "noncustodial parent" of a child who was under 19 years of age and that she should have been provided notice pursuant to § 25-21,271(2), which provides as follows:

Notice of the filing of the [name change] petition shall be published in a newspaper in the county, and if no newspaper is printed in the county, then in a newspaper of general circulation therein. The notice shall be pub-lished (a) once a week for four consecutive weeks if the petitioner is nineteen years of age or older at the time the action is filed and (b) once a week for two consecutive weeks if the petitioner is under nineteen years of age at the time the action is filed. In an action involving a peti-tioner under nineteen years of age who has a noncustodial parent, notice of the filing of the petition shall be sent by certified mail within five days after publication to the noncustodial parent at the address provided to the clerk of the district court pursuant to subsection (1) of section 42-364.13 for the noncustodial parent if he or she has

provided an address. The clerk of the district court shall provide the petitioner with the address upon request.

Margaret alleged that if she had been provided notice of the petition, she would have filed an objection and would have appeared at the hearing to oppose the name change. Margaret therefore requested that the order changing the child's name be vacated and that no further action be taken regarding the requested name change until the pending appeal in the modification and custody case was decided.

Hannah filed a resistance to Margaret's motion to vacate the name change order. She alleged that the following facts were undisputed: Hannah and Margaret had been an unmarried couple living together in Texas at the time that the child, who was conceived through a sperm donor, was born in January 2010. On November 26, 2011, Hannah took the child and moved to her parents' home in Nebraska City, Nebraska. On November 28, Margaret filed a petition in the district court in Texas. After the Texas court heard the case, it entered a temporary order in which it determined that Margaret was a "'non-parent possessory conservator'" and awarded her periods of visitation with the child. Hannah noted in her resistance that the Texas court's order "put no restriction and made no reference of any change of name for" the child. The Texas order further provided that Hannah had certain exclusive rights, which included, inter alia, "the right to represent the child in legal action[s] and to make other decisions of substantial legal significance concerning the child." After Hannah filed her petition in 2014 to register the Texas order in the district court for Otoe County, the Nebraska court conferred with the Texas court, as required by the applicable uniform act, and determined that the Texas court would relinquish jurisdiction of the modification and custody case to the Nebraska court. Hannah further alleged that when Margaret filed her notice of appeal of the district court's December 16, 2016, order modifying custody of the child, Margaret did not request a stay of the order and did not file a supersedeas bond.

Hannah asserted in her resistance to Margaret's motion to vacate that Margaret had no right to notice by certified mail under § 25-21,271(2). She argued that Margaret was not a "noncustodial parent" under that statute, because both the Texas court and the Nebraska court had found that Margaret was not a biological or adoptive parent of the child, and that the Texas court had designated her only as a "'non-parent possessory conservator,'" while it designated Hannah as the "'parent sole managing conservator.'" She noted that nothing in the Texas court's order gave Margaret rights regarding the child's legal name. She further argued that after the Nebraska court filed its modification and custody order on December 16, 2016, Hannah had sole legal and physical custody of the child, while Margaret had no rights of visitation or custody, and that therefore Margaret was clearly not a "noncustodial parent" at the time Hannah filed the petition on December 21 to change the child's name.

The district court heard arguments on Margaret's motion to vacate on February 21, 2017, and on that day, the court entered in its notes a ruling that it denied the motion. Margaret filed a notice of appeal of the ruling on March 20. The Nebraska Court of Appeals on April 17 issued an order to show cause in which it noted that there had been no signed, file-stamped order entered regarding the motion to vacate from which an appeal could be taken. The district court filed a signed and file-stamped order on April 20 in which it denied Margaret's motion to vacate the January 24 name change order. After a copy of the order was filed in the Court of Appeals, the Court of Appeals found that cause had been shown. The Court of Appeals ordered the appeal to proceed, and the appeal was later moved to our docket on our motion.

## ASSIGNMENTS OF ERROR

Margaret claims that the district court erred in its January 24, 2017, order when it granted Hannah's request to change

the child's name and abused its discretion when it overruled her motion to vacate its January 24 order.

## STANDARDS OF REVIEW

[1] Although Margaret cited § 25-2001 as the authority for her motion to vacate, we note that in a civil case, a court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). The district court for Otoe County is in the Second Judicial District, and under Rules of Dist. Ct. of Second Jud. Dist. 2-1 (rev. 1995), the regular term of the court runs from January 1 through December 31 of each calendar year. Therefore, Margaret's February 7, 2017, motion to vacate was filed within the same term as the district court's January 24 order, and § 25-2001 is not applicable. See *Kibler v. Kibler, supra*.

[2,3] The decision to vacate an order at any time during the term in which the judgment is rendered is within the discretion of the court; such a decision will be reversed only if it is shown that the district court abused its discretion. *Id*. An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

*Margaret's Notice of Appeal From the District*
*Court's January 24, 2017, Name Change*
*Order Was Not Timely Filed.*

As urged by Hannah, we note as an initial matter that Margaret's notice of appeal filed on March 20, 2017, was not timely to appeal the court's January 24 name change order. We further note that pursuant to Neb. Rev. Stat. § 25-1912(2) (Reissue 2016), Margaret's notice of appeal from the order denying the motion to vacate is treated as having been filed

on April 20, the date the district court entered a signed, file-stamped order overruling the motion. Therefore, this appeal will be limited to consideration of the error Margaret assigned regarding the order which overruled her motion to vacate.

[4] Under § 25-1912, a party has 30 days from the entry of judgment to appeal the decision of a district court unless a party has filed a motion which tolls the appeal period. In the absence of an applicable rule to the contrary, a motion asking the court to exercise its inherent power to vacate or modify its own judgment does not toll the time for taking an appeal. *State v. Hausmann*, 277 Neb. 819, 765 N.W.2d 219 (2009). A party can move the court to vacate or modify a final order, but if the court does not grant the motion, a notice of appeal must be filed within 30 days of the entry of the earlier final order if the party intends to appeal it. *Id*.

Thus, to the extent Margaret assigns error to the January 24, 2017, order, she did not timely appeal that order and we do not consider such assignment of error. However, Hannah does not argue, and as we have indicated above we do not find, that Margaret failed to timely appeal the district court's order overruling her motion to vacate. We therefore consider Margaret's assignment of error regarding the order of the court which overruled her motion to vacate.

*District Court Did Not Abuse Its Discretion When*
*It Overruled Margaret's Motion to Vacate the*
*District Court's January 24, 2017,*
*Name Change Order.*

Margaret contends that she is a "noncustodial parent" under § 25-21,271(2) and that she was entitled to receive notice of the proposed name change by certified mail. She claims that the district court erred when it concluded that she was not a "noncustodial parent" entitled to certified mail notice and overruled her motion to vacate the January 24, 2017, name change order. We conclude that at the time notice was required to be given in this name change action, Margaret was not a

"noncustodial parent" within the meaning of § 25-21,271(2), and we therefore conclude that the district court did not err when it overruled her motion to vacate the January 24 name change order.

Section 25-21,271(3) requires that before a court can order a name change, the court must be "duly satisfied by proof in open court" that, inter alia, "notice of the filing of the petition has been given as required by this section." No challenge has been made to the adequacy of the published notice. However, if it were shown that another type of notice required by law had not been given, such failure could be a valid reason to vacate an order granting a name change.

Section 25-21,271(2) requires that, in addition to the general notice that must be given by publication, "[i]n an action involving a petitioner under nineteen years of age who has a noncustodial parent, notice of the filing of the petition shall be sent by certified mail within five days after publication to the noncustodial parent . . . ." Whether Margaret was entitled to notice by certified mail, and therefore whether notice was given as required by the statute in this case, depends on whether she was a "noncustodial parent" within the meaning of the statute at the time notice was required to be given. The meaning of "noncustodial parent" under § 25-21,271(2) is a question of law which we decide independently of the trial court. See *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017) (statutory interpretation presents question of law which we review independently).

Hannah argues that Margaret was not a "noncustodial parent" when Hannah filed the petition to change the child's name on December 21, 2016, because any rights Margaret had with respect to the child had been terminated by the district court's December 16 order in the separate modification and custody action. Hannah notes that Margaret did not file a notice of appeal of the December 16 order until January 10, 2017, and as we have noted, Margaret did not post a supersedeas bond or seek a stay of the order.

Margaret argues that because the December 16, 2016, order terminating her custody and visitation rights was being appealed at the time she filed the motion to vacate on February 7, 2017, the district court should have looked to the temporary Texas court order to determine her status. Margaret claims that her Texas status as a "Temporary Non-Parent Possessory Conservator" conferred rights that equate to a "noncustodial parent" entitled to certified mail notice under § 25-21,271(2). She further notes that in the modification and custody case, the district court determined that her status under the Texas order had been similar to in loco parentis status under Nebraska law. Margaret contends that in loco parentis status is the equivalent of a noncustodial parent.

Margaret's arguments overlook the fact that the Texas order specifically referred to Margaret as a "Non-Parent" and gave certain rights exclusively to Hannah; most notably, Hannah was given the exclusive right "to represent the child in legal action[s] and to make other decisions of substantial legal significance concerning the child." Furthermore, we have recognized that in loco parentis status is not equivalent to the status of a legal parent and does not entitle a person to all the same rights that a legal parent would enjoy. See *Windham v. Griffin*, 295 Neb. 279, 286, 887 N.W.2d 710, 715-16 (2016) (stating "unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated"; "an individual standing in loco parentis, which is temporary in nature, is not the functional equivalent of a lawful parent for all purposes or in all contexts").

The critical fact in our determination of whether Margaret was a "noncustodial parent" for purposes of requiring certified mail service under § 25-21,271(2) is that as of the date of the December 16, 2016, order in the modification and custody case, Hannah was awarded sole legal and physical custody of the child and Margaret was awarded no rights to the child.

The district court's December 16, 2016, order extinguished any rights Margaret may have had with respect to the child as a result of the Texas order or her previous in loco parentis status. As noted, Margaret did not move to stay the modification and custody order pending its appeal, and therefore, the order was effective from the time it was entered and during the pendency of its appeal. See *Hall v. Hall*, 176 Neb. 555, 126 N.W.2d 839 (1964) (stating that appeal does not operate as stay of proceedings unless appellant shall have superseded judgment or final order in manner provided by law; where decree awarding custody of minor child has not been superseded, such order will be enforced as in case of any other nonsuperseded judgment). See, also, *Kula v. Kula*, 180 Neb. 893, 146 N.W.2d 384 (1966), and *Kricsfeld v. Kricsfeld*, 8 Neb. App. 1, 588 N.W.2d 210 (1999).

The order extinguishing Margaret's rights of custody and visitation was effective at all times relevant to this action, including when Hannah filed the name change petition, when she published notice, when the petition was considered and granted by the district court, and when Margaret filed her motion to vacate the name change order and the court overruled Margaret's motion. Although it is not determinative of our resolution of this issue in this appeal, we note parenthetically that in *Whilde v. Whilde, ante* p. 473, ___ N.W.2d ___ (2017), we affirmed the district court's December 16, 2016, modification of custody order in the separate case.

We give the word "parent," under the language of § 25-21,271(2), its plain and ordinary meaning, and Margaret was not a "parent" for purposes of the name-changing provision in § 25-21,271(2). Because Margaret had no legal rights to custody or visitation or otherwise with regard to the child at all relevant times during the pendency of this action to change the child's name, it is clear that she was not a "noncustodial parent" under § 25-21,271(2) and that she was not entitled to notice by certified mail as afforded to a noncustodial parent under the statute. The district court's finding in the January 24,

2017, order that the required statutory notice had been given was therefore not erroneous. We conclude that the district court did not abuse its discretion when it overruled Margaret's motion to vacate the January 24 name change order based on the alleged failure to provide certified mail notice.

## CONCLUSION

We conclude that Margaret did not timely appeal the January 24, 2017, name change order, and we therefore do not consider her assignment of error regarding that order. We further conclude that the district court did not abuse its discretion when it overruled Margaret's subsequent motion to vacate the name change order, and we therefore affirm the district court's order overruling the motion to vacate.

AFFIRMED.

WRIGHT, KELCH, and FUNKE, JJ., not participating.