IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF JADEN K. V. TROY H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE ON BEHALF OF JADEN K., A MINOR CHILD, APPELLEE,

V.

TROY H., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE, AND TIFFANY K.,
ALSO KNOWN AS TIFFANY D., THIRD-PARTY DEFENDANT, APPELLANT.

Filed June 12, 2018.    No. A-17-864.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge.
Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Jason A. Ossian, of Douglas, Kelly, Ostdiek, Snyder, Ossian, Vogl & Snyder, P.C., for
appellee Troy H.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Tiffany K., also known as Tiffany D., appeals from the order of the Box Butte County
District Court granting Troy H.'s motion for a directed verdict as to her claim for modification of
custody of the parties' 15-year-old son. Finding no merit to the arguments raised by Tiffany on
appeal, we affirm the decision of the district court.

## II. STATEMENT OF FACTS

Tiffany and Troy H. are the parents of Jaden K., who was born in May 2002. Jaden's
paternity was established in December 2002. At the time paternity was established, Tiffany and
Troy lived together, which facilitated the court's decision to place custody with Tiffany and grant

- 1 -

Troy unlimited visitation. In June 2003, the court first modified its original order and ordered Troy to pay $205 in monthly child support. Over a decade later, in June 2016, Troy filed a complaint to modify and obtain custody of Jaden. Following trial, the court found that a change of circumstances had occurred and awarded custody of Jaden to Troy while granting parenting time to Tiffany. Tiffany was ordered to pay $50 in monthly child support. The court's order acknowledged that Jaden wanted to stay in Alliance, Nebraska, with Tiffany but found that Troy could offer a more stable environment, loving family, and stable home when compared to Tiffany, who had experienced numerous legal troubles, was unemployed, had no income, was suffering from depression, and admitted to using methamphetamine on a daily basis from January 2014 to January 2016, with a "poor prognosis for relapse."

Less than 6 months later, in November 2016, Troy sought to increase Tiffany's child support obligation. Tiffany responded by seeking custody of Jaden. After Troy dropped his request to increase Tiffany's child support, trial commenced on August 1, 2017, solely on Tiffany's request of modification of custody.

1. EVIDENCE ADDUCED AT TRIAL

(a) Troy

Troy lives in Lemmon, South Dakota, with his wife, Dacia H., and Jaden. Dacia has four minor children from a previous marriage who spend most weekends with them. Troy has a 9-year-old son who he "coparent[s]." Since the entry of the June 2016 modification order, Troy resided in the same home and had no major changes in his employment. Troy did experience some health issues which required a 3- to 4-week hospital stay to remove a cancerous tumor in his left lung, but at the time of trial, he was in good health and was back to working full time with no restrictions. During Troy's hospitalization, Jaden stayed with Dacia or with a friend so he would not have to miss school or his activities.

At the time Jaden moved to Troy's home, he was entering 8th grade. The transition was difficult for Jaden because Lemmon was smaller than Alliance, where he formerly resided with Tiffany, and he did not know anyone. At the start of the school year, Jaden was not turning in his assignments properly and was not using study hall to do his homework. His grades suffered initially, but improved during the course of the school year. In the final quarter, Jaden earned mostly A's and B's and one C. Additionally, during the school year, he made good friends, attended youth group, hung out with friends at the Beeler Community Center, and played baseball, football, basketball, and track. Troy testified that he had rules in place for Jaden about his homework and his phone which Troy believed were reasonable and necessary to keep Jaden on schedule, including getting to school on time, and making sure Jaden got his homework done. The rules included no phone calls after 9 p.m. on Monday through Thursday nights, no electronics in Jaden's room, and a curfew.

(b) Visitation Issues

Despite the court order providing that exchanges of Jayden from Troy to Tiffany were to occur on the third weekend of every month beginning at 5 p.m. on Thursday, the parties had been conducting exchanges on Friday evenings. Since Jaden did not get out of school until 3:45 p.m., Troy and Jaden were usually unable to meet Tiffany until between 6:30 or 6:45 p.m. Even though

Jaden usually arrived late for his visits with Tiffany, Troy testified it never occurred to him to offer Tiffany extra time on Sundays. Tiffany only asked for extra time on one occasion, and Troy became very upset because he and Dacia had to coordinate the return of her other children from visitation. Troy testified he did not remove Jaden from school early to arrive on time for Tiffany's visitation because he believed that "school is pretty important." Jaden did arrive on time for his visitation with Tiffany when he had to leave school early for a dentist appointment and on another occasion when Troy's sister took Jaden to meet Tiffany.

When Jaden was in Alliance for parenting time with Tiffany, he resided with Tiffany, his two younger half-siblings, and his maternal grandparents. During summer visitation time, he played baseball, whiffle ball, basketball, and football.

Troy testified that he never denied Tiffany contact with Jaden although he did take away Jaden's cell phone on one night in September 2016 as punishment because Jaden had received a failing grade and needed to complete some extra credit. Troy informed Tiffany that he took away Jaden's phone, but could not recall if he told her the reason. Troy indicated that Tiffany could still have called Jaden on the house phone or on Troy or Dacia's cell phones. Tiffany testified that she did not know that Troy had a house phone and she did not have Dacia's phone number. Tiffany also testified that Troy never informed her that the no phone after 9 p.m. rule did not apply to weekends. Upon being informed that Jaden's phone had been taken away, Tiffany responded by sending Troy profanity-laden text messages and calling law enforcement to check on Jaden because Troy was limiting her phone time. Law enforcement responded to Troy's home and left without entering the home after Troy told the sheriff that Jaden was in his room doing his homework. Tiffany instructed Jaden that Troy cannot take his cell phone away from him and that Troy cannot punish him.

During other phone conversations, Tiffany asked Jaden if Troy and Dacia were being a "dick to him" about the incident where she called the sheriff and indicated that "I'm not gonna fuck around with 'em." In another call, Tiffany told Jaden, "And if they wanna punish you, that'll just be great for us in court."

Troy stated that he tried to call Jaden about half a dozen times when Jaden was with Tiffany during the summer and Tiffany has never denied him contact with Jaden. He admitted that "a couple" of the calls were after 9 p.m. but stated that Tiffany never told him that she had a rule that he could not call later and, if she had informed him of such a rule, he would have abided by it. He further stated that Jaden is with Tiffany on weekends and during the summer, that Jaden's bedtime is later during those times, and that he takes that into account when calling Jaden.

(c) Tiffany

Tiffany testified that she is attending college studying business administration, she is using student loans and grants as her sources of income, and she has been sober for nearly 19 months. Tiffany sought voluntary outpatient treatment from drug and alcohol counselor Samantha Gilmore. Gilmore treated Tiffany from May 2016 through January 2017 working with her on her triggers and coping mechanisms. During that time, Tiffany also attended a women's support group for female addicts led by Gilmore and Gilmore reported that Tiffany was also one of the strongest participants in that group offering support for other weaker participants. The support group ended in April 2017 when Gilmore started the Celebrate Recovery group, which is a weekly, 12-step,

faith-based group for both men and women. Gilmore leads the female side of the group. Although Gilmore is not seeing Tiffany individually, Tiffany still attends the Celebrate Recovery group.

After ending treatment with Gilmore in January 2017, Tiffany began counseling with another counselor reporting symptoms of lack of sleep, little hope for the future, feeling stuck in life, and having little energy. Despite reporting these symptoms to her counselor, at trial, Tiffany denied that she has been depressed within the past year.

Since the June 2016 order, Tiffany pled no contest to shoplifting, a Class II misdemeanor, and was fined $500. She also pled no contest to operating with an expired license, a Class III misdemeanor, and pled guilty to attempted possession of a controlled substance and possession of drug paraphernalia. She was sentenced to 18 months' probation. Tiffany's probation was supervised by probation officer Matthew McKeon who testified that Tiffany was required to meet several conditions including not breaking any laws, complying with random drug testing, and obtaining counseling. McKeon confirmed that, during Tiffany's time on probation, she completed substance abuse counseling, did not have any law violations, and did not test positive on any of her drug tests. Additionally, during her time on probation, Tiffany progressed from being drug tested one to two times per week to eventually being tested about once per month, which progressions were earned by not missing drug tests, testing negative on drug tests, and attending appointments.

(d) Jaden

Jaden described his overall comfort level at Troy's house as a "C." He claims that Troy and Dacia fight "all the time over stupid stuff" and he does not like living there. He also describes his relationship with Troy as a "C" because Troy was not there for the beginning of his life, he did not call, and he did not "show up for anything" and because Troy lies to him. Jaden does not feel that Troy listens to his feelings and he has not talked with Troy about his problems since the night that Troy laughed at him. Jaden acknowledged that Troy is trying to make their relationship better but says his relationship with Troy has gotten worse since he moved to Lemmon and Jaden is mad that Troy took him away from Alliance.

Conversely, Jaden describes his relationship with Tiffany as an "A." Jaden explained that Tiffany has been there for him for his whole life, he has always been able to talk to Tiffany about his problems, Tiffany is more supportive of him, they have a better connection, he trusts her, she is honest with him, and she has never laughed at him to make him uncomfortable. Additionally, when Jaden would call Tiffany and tell her he was unhappy, she encouraged him to try to make the best of it.

Jaden has consistently expressed to Tiffany and a counselor in South Dakota his desire to live in Alliance. He also told Troy and Dacia that he wanted to move back to Alliance, but they "laughed" at him so he never brought up the subject again. Troy admitted that Jaden has told him "a couple" of times that he wanted to live in Alliance, to which he responded that it was not an option, but he denied laughing at Jaden. He described his relationship with Jaden as "very good" and acknowledged that there is "a little bit of transition" when Jaden returns from visitation with Tiffany in that he just wants to lay on the couch and does not want to go out with friends. After a week or two, Jaden goes out with his friends, plays basketball, starts joking around, and is a happy kid. Troy stated that Jaden talks to him about his problems with school or friends and that he

believes that Jaden has adjusted very well to life in Lemmon. He further denied being aware that Jaden was unhappy and stated Jaden has "never showed that when he's been with me."

Jaden testified that Tiffany texts or calls him on a daily basis just to see how he is doing. Conversely, when Jaden spent the summers with Tiffany, Troy would text him once per month. Jaden said that Troy's lack of contact did not really affect him because Troy did not call or text him when he lived in Alliance. Additionally, Tiffany attended Jaden's sports activities whenever it was her weekend, whereas Troy would attend sports activities "when he got the chance to" and would not come to Alliance to watch any of his activities. When asked how it made him feel that Troy did not attend any of his baseball games in Alliance, Jaden responded "It doesn't really bother me as much any more [sic] because he was never really there for me when I was young."

Troy expressed concern about Jayden being returned to the custodial care of Tiffany due to her lack of employment, her lack of stable housing, her negative dialogue about Troy, and Tiffany's depression. He further identified reasons why he felt it was in Jaden's best interests to remain in his custody including a stable home, a routine, a good environment, and family activities such as dinners, walks, golfing, game nights, boating, and camping. Troy described Jaden as happy, laughing, and joking around when he is in Lemmon.

According to Tiffany, Jaden is not happy in Lemmon and, whenever she is driving him home from visitations, he is in tears, silent, and distraught. Tiffany testified she "would not stop fighting for [Jaden] to be able to come home if that's what he wanted" and she would not be in court fighting for the modification if it wasn't Jaden's "wish." Tiffany testified that it was in Jaden's best interests to be in her custody because Alliance was his home where he has grown up, where he has more family and friends, his sports programs are better, and he is more comfortable. Tiffany also testified that she can provide for Jaden's emotional needs because she had been his sole provider for 14 years and had "been through everything with Jaden." Jaden also expressed that he has more family and friends in Alliance and he likes the sports and school programs better there.

## 2. COURT ORDER

On August 8, 2017, the district court dismissed Troy's complaint to modify child support and granted Troy's motion for a directed verdict resulting in dismissal of all matters before the court. Specifically, the district court found that Tiffany failed to demonstrate that a material change in circumstances has taken place since the entry of the court's June 2016 order and, even if a material change in circumstances had occurred, Jaden's best interests were not served by granting custody to Tiffany. The court expressed that it was "appalled at the evidence of the phone calls between [Tiffany] and the minor child" because if Tiffany was speaking negatively to the child about Troy over the telephone, the court was "concerned as to what is being said over the course of her summer parenting time." The court further acknowledged that Jaden's preference was to live with Tiffany and had been since the entry of the June 2016 order; however, the court noted that the child's preference was only one factor to consider when making this determination.

## III. ASSIGNMENTS OF ERROR

Tiffany contends the district court erred in finding that (1) there was no material change in circumstances and (2) modification of custody was not in Jaden's best interests.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017); *Windham v. Griffin,* 295 Neb. 279, 887 N.W.2d 710 (2016). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

In a review de novo on the record, the court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

### 1. MATERIAL CHANGE IN CIRCUMSTANCES

Tiffany had custody of Jayden from 2002 to June 2016. At that time, the court determined a change in circumstances occurred which warranted a change in custody of Jayden from Tiffany to Troy. Tiffany argues that she has since changed the circumstances which led to the order, and requests the return of Jayden to her custody. Specifically, Tiffany argues that, since the previous order, she has resolved her criminal problems, entered therapy, and maintained sobriety for 19 months. Since these were the problems that led to the modification, Tiffany argues that their resolution constituted a material change in circumstances.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Whilde v. Whilde, supra*; *Hopkins v. Hopkins,* 294 Neb. 417, 883 N.W.2d 363 (2016). The party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Whilde v. Whilde, supra*; *Hopkins v. Hopkins, supra*. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id*. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id*.

Tiffany argues that *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005) stands for the proposition that "[i]mprovement in the causes leading to a change in custody is a material change in circumstances." Brief for appellant at 8. Tiffany argues that because she improved the conditions which led to the change in custody, there is a change in circumstances and Jayden's best interests would be served by returning custody of Jayden to her.

In *Adams*, the mother appealed from the denial of her request to modify custody. This court held that a material change of circumstances was established where the minor child's relationship with each parent had changed significantly since the entry of the parties' custody agreement and the mother's behavior had "undergone significant improvements" including going through rehabilitation and maintaining sobriety. *Adams*, 13 Neb. App. at 285, 691 N.W.2d at 549.

However, in *Adams*, we affirmed the denial of the mother's request to modify custody after finding that modification was not in the child's best interests.

Despite Tiffany's argument to the contrary, *Adams, supra*, is distinguishable from the present case. Unlike the mother in *Adams*, Tiffany has not remedied all areas of concern identified in the June 2016 order. Although Tiffany has maintained her sobriety for nearly 19 months, she has been convicted in two separate criminal cases since the entry of the June 2016 order and remains on probation subject to drug testing. She testified that she no longer suffers from depression, but in January 2017, she reported to a counselor symptoms of lack of sleep, little hope for the future, feeling stuck in life, and having little energy. Tiffany still lacks her own residence and income. Although Tiffany has made improvements in her life, she has failed to establish a material change of circumstances supporting a modification of custody at this time.

## 2. BEST INTERESTS

Tiffany also contends that the district court erred in determining that modification of custody was not in Jaden's best interests. Tiffany places a great deal of emphasis on the minor child's wishes because, in this case, Jaden has expressed a preference to live with Tiffany with whom he has a strong and supportive relationship.

The party seeking modification must prove that changing the child's custody is in the child's best interests. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017); *Hopkins v. Hopkins,* 294 Neb. 417, 883 N.W.2d 363 (2016).

Although Tiffany appears to argue that Jaden's preference regarding custody should not only be given consideration but should be controlling, a minor child's desires and wishes are only one factor, among many, to be considered by a court in determining a child's best interests. *Berndt v. Berndt*, 25 Neb. App. 272, 904 N.W.2d 24 (2017). While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Id*.

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude

and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004); *Berndt v. Berndt, supra*.

When all the factors are considered, the overall environment provided by Troy remains in Jaden's best interests. Troy provides a stable home, a routine, and rules which have shown results in helping Jaden improve his grades over the course of the school year. Jaden, a natural athlete, has been active in sports and has made friends in Lemmon. At Troy's home, Jaden is able to take part in family activities such as dinners, walks, golfing, game nights, boating, and camping. We acknowledge that Jaden has expressed a preference to live with Tiffany, but her negative dialogue with Jaden about Troy is concerning. Additionally, Tiffany still lacks her own residence, lacks an income, and remains on probation. Jayden was relocated to Lemmon to live with his father in June 2016 due to the constellation of problems involved with Tiffany. Troy has provided a stable, caring environment for Jayden to progress, and that progression is evident. In *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005), we applauded the mother's efforts to improve her behavior and we, again, do so here. Like in *Adams*, we find it was not an abuse of discretion for the district court in this case to consider prior behavior when considering the child's general health and welfare and in finding that the child's health and welfare were better served in keeping custody with his father. We hold that Tiffany failed to meet her burden of proving that modifying Jaden's custody was in his best interests.

## VI. CONCLUSION

Upon our de novo review of the record, we find that Tiffany's resolution of certain issues identified by the district court in its earlier order modifying custody from Tiffany to Troy did not establish a material change in circumstances occurring after the entry of the June 2016 modification order. Further, Jaden's expressed preference to live with Tiffany is not controlling and is only one factor in considering whether modification of custody is in the best interests of the child. After considering all of the relevant factors, we find that modification of custody is not in Jaden's best interests. Therefore, the decision of the district court is affirmed.

AFFIRMED.